UNITED STATES of America, Appellee,

v.

George A. PELENSKY, Defendant–Appellant.

No. 2322, Docket 97–1265.

United States Court of Appeals, Second Circuit.

Argued Aug. 4, 1997.

Decided Sept. 12, 1997.

Peter G. Neiman, Assistant United States Attorney for the Southern District of New York, New York City (Mary Jo White, United States Attorney for the Southern District of New York, Dietrich L. Snell, Assistant United States Attorney for the Southern District of New York, of counsel), for Appellee.

John L. Pollok, Hoffman Pollok & Pickholz, LLP, New York City (Michael S. Pollok, of counsel), for Appellant.

Before: CALABRESI, CABRANES, and PARKER, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

Defendant-appellant George Pelensky appeals from a Judgment and Commitment Order filed on April 23, 1997 in the United States District Court for the Southern District of New York (Deborah A. Batts, *Judge*), revoking his term of supervised release and sentencing him to 36 months in prison. Pelensky's principal arguments on appeal are: (1) the district court erred when

it accepted his admission of supervised release violations without conducting the type of voluntariness colloquy required by Rule 11 of the Federal Rules of Criminal Procedure and *Boykin v. Alabama,* 395 U.S. 238, 242–44, 89 S.Ct. 1709, 1711–13, 23 L.Ed.2d 274 (1969), when a court accepts a defendant's guilty plea; (2) Rule 32(b) of the Federal Rules of Criminal Procedure required the Probation Department to prepare a new presentence report, despite the fact that one had already been prepared before Pelensky's original sentencing hearing, prior to Pelensky's sentencing for violating the terms of his supervised release; (3) the court's sentence of 36 months in prison was unreasonable, and was imposed without due consideration of the policy statements found in Chapter Seven of the Federal Sentencing Guidelines; and (4) this sentence is invalid because it was imposed without notice to Pelensky of the court's intention to depart from the sentencing range recommended by these policy statements. We reject these arguments and affirm for the reasons set forth below.

## I.

Pelensky pled guilty in the United States District Court for the Eastern District of Virginia, on April 12, 1992, to one count of conspiracy to possess with intent to distribute 100 grams or more of heroin. On June 12, 1992, the court sentenced Pelensky principally to a prison term of 63 months and four years of supervised release, with the special condition of substance abuse testing and treatment. After Pelensky cooperated with the government in prosecuting his co-conspirators, the court reduced his prison term to 24 months, but did not otherwise alter the original sentence. Pelensky was released from custody and began serving his supervised release term on February 3, 1994. Jurisdiction over his case was transferred to the United States District Court for the Southern District of New York, where Pelensky had established residence, on September 6, 1996.

Under the terms of his supervised release, Pelensky was required to submit to periodic drug testing. Pelensky tested positive for drug use on June 24, 1996, and again on August 8, 1996. On both occasions, when confronted by his probation officer, he denied having used drugs. During a drug test on August 22, 1996, Pelensky was discovered to be wearing an "intricate tubing system" designed to allow him to foil the test. He was referred to a drug detoxification clinic by his probation officer, but chose instead to travel outside the jurisdiction, in violation of the terms of his supervised release, to attend a one-day detoxification program of his choosing. Thereafter, Pelensky again twice tested positive for drug use. Finally, after Pelensky visited the Probation Department in what appeared to be a drug-induced stupor and failed to produce a urine sample for testing, the Department petitioned the district court to institute supervised release revocation proceedings, based on Pelensky's continued drug use and his refusal to seek treatment.

When Pelensky first appeared before the district court for a supervised release revocation hearing on November 12, 1996, the court acceded to Pelensky's request that he be released on his own recognizance and that the hearing be adjourned until November 25 so that he could enter a detoxification program.[1] The court warned Pelensky, however, that he would be arrested if he did not appear at the Probation Department on November 14 for placement in a designated program. Pelensky nevertheless failed to show up at the appointed time, and the court promptly issued a bench warrant. Pelensky was brought before a magistrate judge on November 18, who again released him on the condition that he would immediately begin a detoxification program that the Probation Department had arranged for him to enter. This time, Pelensky did enter the treatment program.

On December 2, 1996, Pelensky appeared before Judge Batts for a hearing on the petition for revocation of his supervised re-

---

**1.** Throughout all of the proceedings before the district court, Pelensky was represented by privately-retained counsel.

lease. At this hearing, Pelensky admitted to two of the instances of drug use charged in the Probation Department's petition, and to having further violated his supervised release by leaving the jurisdiction without permission. Pelensky's counsel requested that the court adjourn the proceeding without sentencing to allow Pelensky to enter a long-term residential drug treatment program. The court at first considered sentencing Pelensky to attend the residential program, noting that failure to attend would constitute a further violation of supervised release and would cause the court to impose a prison term. "[I]f he leaves the program," Judge Batts stated, "which I consider the carrot, we are back to the stick.... And I think it is only fair to say that would be the full amount of time he could be sentenced to prison.... If he comes back before me, I promise 11 months in prison." "Eleven months" was apparently a reference to the maximum sentence recommended by the Sentencing Guidelines' Chapter Seven policy statements for a person in Pelensky's Criminal History Category who commits supervised release violations of the type he committed.[2]

The court ultimately decided not to impose sentence at the December 2, 1996, hearing, but to adjourn sentencing until March 3, 1997, so that Pelensky could enter and complete a long-term residential treatment program. In so doing, the court warned Pelensky that the consequences of

failing to complete the program would be dire:

> If there is any additional difficulty and you haven't been able to work it out with [the probation officer's] assistance or on your own, you are facing being sentenced to 11 months, *and perhaps longer,* depending upon what is permissible under the statute. (Emphasis supplied).

Pelensky left the treatment program after only one day. A new bench warrant was issued on December 3, 1996. Pelensky initially could not be located, but was finally arrested on March 18, 1997; a magistrate judge ordered that he be held in custody.

At the ensuing sentencing hearing on April 14, 1997, Judge Batts noted the five- to eleven-month range recommended by the Sentencing Guidelines' policy statements, but given Pelensky's continued drug use and his repeated disregard for the rehabilitation opportunities he had been given, decided to impose the statutory maximum of 36 months in prison.[3] Pelensky now appeals.

## II.

Pelensky first argues that before the district court accepted his admission of supervised release violations, the court was required to engage in the type of voluntariness colloquy that, when a court accepts a defendant's guilty plea, is mandated by Rule 11 of the Federal Rules of Criminal Procedure ("Rule 11")[4] and the due process standard

---

**2.** As the Probation Department's petition for revocation of supervised release indicated, Pelensky was in Criminal History Category III, and his supervised release violations constituted Grade C violations pursuant to § 7B1.1(a)(3)(B) of the Guidelines. Under these circumstances, the table set out in § 7B1.4 of the Guidelines recommends a sentencing range of five to eleven months.

**3.** As the Probation Department's petition indicated, Pelensky's underlying offense was a Class B Felony, and accordingly, 18 U.S.C. § 3583(e)(3) provides for a maximum of 36 months' imprisonment upon Pelensky's violation of his supervised release.

**4.** Rule 11 provides, in pertinent part:

(c) **Advice to Defendant.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and deter-

mine that the defendant understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense; and

(2) if the defendant is not represented by an attorney, that the defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the defendant; and

(3) that the defendant has the right to plead not guilty or to persist in that plea if it has

established in *Boykin v. Alabama*, 395 U.S. 238, 242–44, 89 S.Ct. 1709, 1711–13, 23 L.Ed.2d 274 (1969). In the absence of a formal, on-the-record colloquy of the type required by Rule 11 and *Boykin*, Pelensky argues that he was improperly caused to waive the protections to which he was entitled under Rule 32.1 of the Federal Rules of Criminal Procedure ("Rule 32.1"),[5] governing revocation of probation or supervised release. We disagree.

We endorse the conclusion reached by the four circuits that have previously considered the applicability of Rule 11 in revocation proceedings,[6] none of which found a statutory or constitutional requirement of a voluntariness colloquy in such proceedings. *See United States v. Rapert*, 813 F.2d 182, 184–85 (8th Cir.1987); *United States v. Stehl*, 665 F.2d 58, 59–60 (4th Cir.1981); *United States v. Johns*, 625 F.2d 1175, 1176 (5th Cir. (Unit B) 1980); *United States v. Segal*, 549 F.2d 1293, 1296 (9th Cir.), *cert. denied*, 431 U.S. 919, 97 S.Ct. 2187, 53 L.Ed.2d 231 (1977).[7]

 Rule 11 on its face applies only to the procedures a court must follow "[b]efore accepting a plea of guilty or nolo contendere," Fed. R. Crim. P. 11(c), and nothing in the advisory committee notes suggests the rule's

already been made, the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, and the right against compelled self-incrimination; and

(4) that if a plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere the defendant waives the right to a trial; and

(5) if the court intends to question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant has pleaded, that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

**(d) Insuring That the Plea is Voluntary.** The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or the defendant's attorney.

5. Rule 32.1 provides, in pertinent part:

**(a) Revocation of Probation or Supervised Release**

**(1) Preliminary Hearing.** Whenever a person is held in custody on the ground that the person has violated a condition of probation or supervised release, the person shall be afforded a prompt hearing before any judge, or a United States magistrate who has been given the authority pursuant to 28 U.S.C. § 636 to conduct such hearings, in order to determine whether there is probably [sic] cause to hold the person for a revocation hearing. The person shall be given

(A) notice of the preliminary hearing and its purpose and of the alleged violation;

(B) an opportunity to appear at the hearing and present evidence in the person's own behalf;

(C) upon request, the opportunity to question witnesses against the person unless, for good cause, the federal magistrate decides that justice does not require the appearance of the witness; and

(D) notice of the person's right to be represented by counsel.

The proceedings shall be recorded stenographically or by an electronic recording device. If probable cause is found to exist, the person shall be held for a revocation hearing. The person may be released pursuant to Rule 46(c) pending the revocation hearing. If probable cause is not found to exist, the proceeding shall be dismissed.

**(2) Revocation Hearing.** The revocation hearing, unless waived by the person, shall be held within a reasonable time in the district of jurisdiction. The person shall be given

(A) written notice of the alleged violation;

(B) disclosure of the evidence against the person;

(C) an opportunity to appear and to present evidence in the person's own behalf;

(D) the opportunity to question adverse witnesses; and

(E) notice of the person's right to be represented by counsel.

6. The cases cited all involved revocation of probation rather than supervised release. The distinction, however, is immaterial in light of this Court's recognition that "[t]he nature of supervised release ... is virtually the same as the nature of probation." *United States v. Meeks*, 25 F.3d 1117, 1121 (2d Cir.1994); *see also* Fed. R.Crim. P. 32.1 (establishing same procedure for revocation of both probation and supervised release).

7. Although all four circuits found Rule 11 to be inapplicable, only *Rapert* and *Segal* squarely addressed the constitutional issue.

applicability when a court accepts admissions of probation or supervised release violations. *See Rapert*, 813 F.2d at 184–85; *Segal*, 549 F.2d at 1296. The rule is addressed to "the taking of the plea, not the imposition of sentence or the revocation of probation," *Segal*, 549 F.2d at 1296, or supervised release. Although Congress remains free to amend Rule 11 if it wishes the rule to apply to the revocation of supervised release, it is not for a court to do so.

■ Moreover, the due process concerns that animated the Court's holding in *Boykin*—that a guilty plea must be supported by an affirmative, on-the-record showing of voluntariness and an awareness of the rights being relinquished, *see* 395 U.S. at 242–44, 89 S.Ct. at 1711–13—do not apply with equal force in the context of revocation of supervised release. Unlike guilty pleas, admissions to violations of supervised release are "not made in the course of a criminal trial and do not give rise to a different statutory offense or to an increase in punishment on the underlying conviction. [The defendant] is subject to the same maximum punishment of which she presumably was apprised before pleading guilty in the district court." *Segal*, 549 F.2d at 1300. We only recently had occasion to observe that "because the conduct that violates the conditions of supervised release is not viewed as a separate criminal offense," *United States v. Meeks*, 25 F.3d 1117, 1123 (2d Cir.1994), "most of the fundamental constitutional procedural protections that are normally applicable to a criminal prosecution are not required for supervised-release proceedings as a matter of constitutional law," *id.* In particular, and among other constitutional rights not applicable to defendants in revocation proceedings,[8] there is "no right to jury trial, an attenuated confrontation right, and a limited self-incrimination privilege," *Rapert*, 813 F.2d at 185—the very rights with which *Boykin* was concerned, *see* 395 U.S. at 243, 89 S.Ct. at 1712. We therefore join the other circuits that have addressed the issue in concluding that due process of law does not require a court to elicit a formal waiver from a defendant who has admitted to violating the terms of probation or supervised release.[9]

Not only is a voluntariness colloquy not required by Rule 11 or *Boykin* before a court may accept a defendant's admission of supervised release violations, but such a formal colloquy would be ill suited to the context of supervised release proceedings. In contrast to the adversarial setting that characterizes the offering of a guilty plea, a revocation of supervised release proceeding features the involvement of the probation officer, who is responsible for representing the defendant's best interests to the greatest extent possible consistent with the welfare of the community. *See Gagnon v. Scarpelli*, 411 U.S. 778, 783–84, 93 S.Ct. 1756, 1760–61, 36 L.Ed.2d 656 (1973). The responsibilities of the probation officer "can best be carried out in a less adversary and contentious atmosphere." *Segal*, 549 F.2d at 1300. "To superimpose formalistic procedures" such as a Rule 11 colloquy onto this context, however much it may be sound practice for judges to elicit *some* indication of voluntariness for the record, "is neither required by due process nor necessarily conducive to a more effective accomplishment of the goals of probation," *id.* at 1301, or supervised release.

■ All that has been said regarding the crucial differences between guilty pleas and admissions of supervised release violations equally disposes of Pelensky's unsupported contention that Rule 32(b) of the Federal Rules of Criminal Procedure ("Rule 32(b)")[10]

---

**8.** Among the fundamental constitutional protections that do not apply in the context of supervised release revocation proceedings are the right not to be twice placed in jeopardy, the requirement that the government prove its allegations beyond a reasonable doubt, and the right to counsel. *See Meeks*, 25 F.3d at 1122–23.

**9.** This conclusion does not change the fact that a defendant's waiver must actually be knowing and voluntary, and does not address the situation where there is independent evidence in the record suggesting that the admission of supervised release violations and the waiver of a Rule 32.1 revocation hearing was not knowing and voluntary—a situation that does not exist in the instant case.

**10.** Rule 32(b) provides, in pertinent part:
 **(b) Presentence Investigation and Report.**
 **(1) When Made.** The probation officer must make a presentence investigation and submit

requires a new presentence report to be prepared by the Probation Department before a defendant may be sentenced for violating the terms of his supervised release. Nothing in Rule 32 suggests that an additional presentence report must be prepared at this stage, and we see no reason whatsoever to mandate such a report after one has already been prepared following the defendant's guilty plea and before his original sentencing hearing. Although it is customary in supervised release proceedings for the probation officer to submit to the judge a memorandum regarding the status of the defendant and the subject of the hearing—and just such a memorandum was submitted to Judge Batts in the instant case—there is no requirement that such communications with the judge meet any particular standard of formality, much less those of a full-fledged presentence report.

In sum, the district court did not err by accepting Pelensky's admission of supervised release violations without probing the voluntariness of this admission and eliciting a formal waiver of his right to a Rule 32.1 revocation hearing; nor did the court err by not requiring a new presentence report to be prepared at this stage of the proceedings.

### III.

Pelensky next argues that the district court abused its discretion when it sentenced him to the statutory maximum of 36 months in prison, and that it erred when it imposed this sentence without providing notice of its intention to upwardly depart from the policy statements contained in Chapter Seven of the Sentencing Guidelines. These arguments are without merit.

■ There is no sentencing guideline governing violations of supervised release.

In the absence of an applicable guideline, we will uphold the district court's sentence if "(1) the district court considered the applicable policy statements; (2) the sentence is within the statutory maximum; and (3) the sentence is reasonable." *United States v. Anderson,* 15 F.3d. 278, 284 (2d Cir.1994). Although a district court, in sentencing a defendant for a violation of supervised release, "is directed to consider the non-binding policy statements found in Chapter Seven of the Guidelines Manual," the court ultimately has "broad discretion to revoke its previous sentence and impose a term of imprisonment" up to the statutory maximum. *United States v. Sweeney,* 90 F.3d 55, 57 (2d Cir.1996). Because Chapter Seven policy statements are merely advisory and non-binding, moreover, "the district court need not make the explicit, detailed findings required when it departs upward from a binding guideline." *Anderson,* 15 F.3d at 284 (internal quotation marks and citations omitted).

■ The record in the instant case indicates that the district court was well aware of the sentencing range suggested by the Guidelines'. Chapter Seven policy statements, and that the court made a deliberate decision to depart from the suggested range and sentence Pelensky to the statutory maximum. That the court was considering the possibility of departing from the eleven-month ceiling suggested in Chapter Seven in order to impose the statutory maximum was clear from Judge Batts's remarks at the December 2, 1996, hearing. The court told Pelensky that if he disobeyed the court once again by failing to follow through with the long-term drug treatment program he was directed to enter, "you are facing being sentenced to 11 months, and perhaps longer, depending upon what is permissible under the statute." [11] The court's consideration of the Guidelines'

a report to the court before the sentence is imposed, unless:
(A) the court finds the information in the record enables it to exercise its sentencing authority meaningfully under 18 U.S.C. § 3553; and
(B) the court explains this finding on the record.

11. This statement reveals that Pelensky's claim that the court somehow committed itself to sentencing him to no more than eleven months—a claim based on a single statement taken out of context—is without merit. Equally groundless is Pelensky's claim that, in the absence of the court having "promised" a term of eleven months, he would not have admitted to his supervised release violations. Pelensky made these admissions *before* the court made any mention of an eleven-month term.

policy statements and its conscious decision to depart from them was also evident during the April 14, 1997, hearing at which the district court imposed sentence. The court read from a letter from Pelensky's probation officer that had been provided to the court and counsel, dated February 14, 1997, which stated that "[t]he original Guideline range for the violation ... was 5 to 11 months. The statutory range is up to 36 months." [12] Later in the proceeding, the court noted that the imposed sentence of 36 months was an "upward departure" justified by the defendant's dismal track record on supervised release.

Inasmuch as the court duly considered the applicable policy statements and imposed a sentence within the statutory maximum, the question remaining is whether the sentence of 36 months was reasonable. We find this sentence to have been well within the "broad discretion" of the district court. Although the court was not required to make the "explicit, detailed findings" required for upward departures from binding guidelines, Judge Batts explained that she was imposing the statutory maximum (along with a recommendation that Pelensky receive drug treatment while in prison), "based on my experience with Mr. Pelensky and my determination that, under these circumstances, the best place for Mr. Pelensky to clean up and to remain clean for a period of time is prison." Judge Batts also noted that Pelensky "has shown nothing but consistent disregard for opportunities that he has been given." The court's consideration of Pelensky's demonstrated inability to complete drug treatment outside of prison was entirely appropriate, see Anderson, 15 F.3d at 282 ("a court may consider an offender's medical and correctional needs when requiring that offender to serve time in prison upon the revocation of supervised release"), as was its consideration of Pelensky's consistent disregard for court orders. Under these circumstances, imposition of the statutory maximum was entirely reasonable.

■ Pelensky argues, finally, that the district court erred by upwardly departing from the Guidelines' policy statements without giving him reasonable notice of its intention to do so or its grounds for departing. This claim is belied by the court's statement at the December 2, 1996, hearing, noted above, that if Pelensky were to disobey the court yet again by failing to complete a treatment program, he would "fac[e] being sentenced to 11 months, *and perhaps longer*, depending upon what is permissible under the statute." (Emphasis supplied). In any event, we find that the court was not required to give notice to Pelensky before imposing a sentence above the range suggested by Chapter Seven's non-binding policy statements.

> The Supreme Court has held that
>
> before a district court can depart upward on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the Government, Rule 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling. This notice must specifically identify the ground on which the district court is contemplating an upward departure.

*Burns v. United States*, 501 U.S. 129, 138–39, 111 S.Ct. 2182, 2187, 115 L.Ed.2d 123 (1991); *see also United States v. Leonard*, 37 F.3d 32, 37 (2d Cir.1994); *United States v. Marquez*, 941 F.2d 60, 64–65 (2d Cir.1991). We agree with the other circuits that have addressed the issue, however, that this notice requirement does not apply to deviations from the non-binding policy statements found in Chapter Seven of the Guidelines. *See United States v. Burdex*, 100 F.3d 882, 885 (10th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1283, 137 L.Ed.2d 358 (1997); *United States v. Hofierka*, 83 F.3d 357, 362 (11th Cir.1996), *modified*, 92 F.3d 1108 (11th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 717, 136 L.Ed.2d 636 (1997); *United States v. Mathena*, 23 F.3d 87, 93 n. 13 (5th Cir.1994). Because these policy statements are merely advisory, the sentencing court is not "departing" from any binding guideline

---

**12.** The petition submitted to the court by the Probation Department requesting revocation of supervised release likewise explained both the

suggested Guidelines range as well as the statutory maximum applicable to Pelensky.

when it imposes a sentence in excess of the range recommended by the Chapter Seven policy statements. When imposing a sentence for violation of supervised release, the court is bound only by the statutory maximum imposed by Congress, and is therefore under no obligation to provide notice to defendants of its intent to exceed the non-binding sentencing ranges recommended in Chapter Seven of the Guidelines. *See Burdex*, 100 F.3d at 885; *Hofierka*, 83 F.3d at 362–63; *Mathena*, 23 F.3d at 93 n. 13; *cf. United States v. Davis*, 53 F.3d 638, 642 n. 15 (4th Cir.1995) ("Our holding that the Chapter 7 policy statements were not binding on the district court disposes of [the defendant's] argument that the district court made an unlawful departure from the Sentencing Guidelines. It is well established that [a] sentence which diverges from advisory policy statements is not a departure.") (internal quotation marks and citation omitted).

In sum, the district court properly imposed sentence on Pelensky.

### IV.

To summarize:

(1) Neither Rule 11 nor *Boykin v. Alabama*, 395 U.S. 238, 242–44, 89 S.Ct. 1709, 1711–13, 23 L.Ed.2d 274 (1969), required the district court to engage in a voluntariness colloquy or elicit a formal waiver of Pelensky's right to a Rule 32.1 revocation hearing before accepting his admission of supervised release violations.

(2) Rule 32(b) did not require a new presentence report to be prepared by the Probation Department prior to Pelensky's sentencing for violations of supervised release and after one had already been prepared before his original sentencing hearing.

(3) The district court's sentence of 36 months in prison, the statutory maximum, was reasonable, and was not imposed without due consideration of the Guidelines' policy statements.

(4) The district court was not required to provide notice to Pelensky of its intent to sentence him to a term in excess of the range recommended by the non-binding policy statements contained in Chapter Seven of the Sentencing Guidelines.

Accordingly, we affirm the judgment of the district court.