06-4276-cr
*USA v. Altman*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

––––––––––

August Term, 2006

(Argued: May 8, 2007                                    Decided: August 16, 2007)

Docket No.  06-4276-cr

––––––––––

UNITED STATES OF AMERICA,

*Appellee*,

–v.–

DONNELL HARGROVE, ALSO KNOWN AS THIRST, NAKIM WEST, ALSO KNOWN AS KNOCK, ALSO
KNOWN AS KNOCKIE, JASON CAMPBELL, BEVERLY RICHARDSON, ALSO KNOWN AS BEVERLY,
JAMES E.  JOHNSON, ALSO KNOWN AS GOLDI,

*Defendants*

TERRANCE ALTMAN,

*Defendant-Appellant.*

––––––––––

Before:

FEINBERG, CALABRESI, and WESLEY, *Circuit Judges.*

Appeal from a judgment of the United States District Court for the Southern District of
New York (McMahon, *J.*), *sua sponte* imposing a sentence outside the range recommended by
the applicable Sentencing Guidelines policy statement for revocations of supervised release.

AFFIRMED.

––––––––––

1

MARSHALL A. MINTZ, Mintz & Oppenheim LLP, New York, NY, *for Defendant-Appellant*.

EUGENE INGOGLIA, Assistant United States Attorney *on behalf of* Michael J. Garcia, United States Attorney for the Southern District of New York (Celeste L. Koeleveld, Assistant United States Attorney, of counsel, *on the brief*), New York, NY, *for Appellee*.

_____

WESLEY, *Circuit Judge*:

This case asks us to decide, in effect, whether *United States v. Booker*, 543 U.S. 220 (2005), and our jurisprudence since then has made it necessary for district courts to give notice before *sua sponte* imposing a sentence outside the range recommended by the applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") policy statements for violation of conditions of supervised release. We hold that such notice and an opportunity to challenge the basis for the sentence outside the applicable advisory range need not be given. Accordingly, we affirm the sentence imposed.

## Background

On January 19, 2006, appellant Terrence Altman pleaded guilty to a one count superseding misdemeanor information, which charged him with knowingly, intentionally, and unlawfully possessing a controlled substance in violation of 21 U.S.C. §§ 812 and 844. Before Judge Colleen McMahon, Altman waived his presentence investigation report and requested that he be sentenced on that date. The district court sentenced Altman to a term of imprisonment of time served and supervised release of one year, and ordered him to pay a $1,000 fine and a special assessment of $25. As a condition of supervised release, Altman agreed not to possess or use any controlled substance and to submit to periodic drug tests.

On March 28, 2006, Altman reported to the United States Probation Office for the Southern District of New York ("Probation Office") and provided a urine sample – a required condition of his supervised release. On May 3, 2006, the Probation Office sent a Request for Court Action to Judge McMahon noting that the urinalysis had tested positive for cocaine, the use of which Altman apparently denied, and that Altman had refused to submit to a subsequent urinalysis in April 2006. Specifically, the report stated three violations of Altman's supervised release: (1) Altman had used cocaine at some point on or prior to March 28; (2) Altman had possessed cocaine at some point on or prior to March 28; and (3) Altman had refused to provide a urine sample in April.[1] The report noted that the the first two violations were "Grade C" violations.[2] The report further specified that according to U.S.S.G. § 7B1.4, which is a non-binding policy statement as opposed to a previously mandatory sentencing guideline,[3] the possible range of imprisonment for Altman for violating the conditions of his supervised release was three to nine months, with a statutory maximum of one year. Following a hearing on July 20, 2006, Altman was found guilty of violations (1) and (2). Judge McMahon then adjourned the matter for sentencing pending the preparation of a presentence investigation report but continued Altman's supervised release with the added condition that he be tested for drug use every other week.

---

[1] The government moved to dismiss this third specification on July 20, 2006, and Judge McMahon did so.

[2] Grade C violations involve "conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision." U.S.S.G. § 7B1.1(a)(3).

[3] For purposes of clarity, we speak of "sentencing guidelines" as distinguished from policy statements which, along with sentencing guidelines, are a part of the Guidelines.

Before Altman could be sentenced, he returned to the Probation Office for another drug test on August 4, 2006. In a second Request for Court Action, the Probation Office informed the court that Altman had tested positive for cocaine/benzoylecgonine. The report alleged two violations: (1) use of a controlled substance; (2) possession of a controlled substance. Again, the report noted a revocation range of three to nine months of imprisonment, with a statutory maximum of one year. Altman was thereafter arrested.

On September 6, 2006, Altman appeared before the district court in order to address the second violation of his supervised release. After some discussion, Altman offered to plead guilty to the first specification, use of a controlled substance, which the government agreed to accept in satisfaction of the violation petition. The district court explained:

> Let me tell you what can happen to you as a result of these violations. I can, if you are found guilty of these violations, either or both of them, sentence you to not more than [a] one year period of incarceration. Because they are Grade C violations there is a guideline range of three to nine months which I'm not bound by. I cannot go beyond one year by statute because your original conviction was for a Class A misdemeanor.

For sentencing purposes, the district court agreed to consolidate both the first and second violations of supervised release. Judge McMahon clarified that regardless of the number of violations, Altman faced a maximum one year in prison. After a detailed allocution, Altman pleaded guilty to use of a controlled substance; he also waived the preparation of a presentence investigation report. The court sentenced Altman to one year of incarceration. In so doing, Judge McMahon stated:

> You got a very good deal, Mr. Altman . . . on the original case. You were cut a tremendous break. I was very happ[y] about that. I liked your family and thought everything was going to work out. And everything has not worked out. You've been here twice on use violations. And the first time you absolutely denied using and I

disbelieved you, especially in view of the testimony of the chemist. And this time you admit using. But you're stressed, and probation officers didn't treat you nicely, and the dog ate your homework. So you used. And I do not see any sign, Mr. Altman, that you would succeed in a residential treatment program.

I agree with the government that the appropriate thing to do is to give you a sentence of incarceration. We're now dealing with two separate occasions, a conviction on three violations. And I'm going to sentence you . . . for a term of one year . . . .

It is this sentence that Altman now appeals to us, primarily on the grounds that the district court did not give him notice that it intended to impose a sentence beyond the three to nine month range.

**Discussion**

Altman contends on appeal that the district court erred when it failed to provide him notice of its intention to impose *sua sponte* a sentence outside the range recommended by the applicable Guidelines policy statement for revocations of supervised release, a question we originally considered a decade ago before the changes brought upon the federal sentencing scheme by *United States v. Booker*, 543 U.S. 220 (2005), and its progeny. *United States v. Pelensky*, 129 F.3d 63 (2d Cir. 1997), presented a set of facts similar to those before us now. Pelensky was sentenced to imprisonment followed by supervised release. *Id.* at 65. During his term of supervised release, Pelensky, *inter alia*, tested positive for drug use, contrary to the terms of his release. *Id.* Pelensky came before the district court for a hearing on the government's petition for revocation of his supervised release, at which point his counsel requested that the proceeding be adjourned without sentencing in order to allow him to enter a drug treatment program. *Id.* at 65, 66. The Guidelines' Chapter Seven policy statements recommended a sentencing range of five to eleven months. *Id.* at 66.

5

The district court decided to adjourn sentencing so that Pelensky could enter the treatment program. *Id.* However, the court warned Pelensky that if he failed to complete the program, he faced "being sentenced to 11 months, and perhaps longer, depending upon what is permissible under the statute." *Id.* (emphasis in original omitted). Pelensky, despite the warning, did not complete the treatment program. *Id.* When Pelensky came before the district court for his sentencing hearing, the judge noted the suggested range of five to eleven months but decided, instead, to impose the statutory maximum of thirty-six months. *Id.* Pelensky raised several arguments before us, but the one germane to Altman's appeal argued that the district court was required to give him notice before imposing *sua sponte* a sentence higher than that suggested by the Guidelines' Chapter Seven policy statements. *Id.* at 69.

We affirmed the district court. We began by noting that "[t]here is no sentencing guideline governing violations of supervised release." *Id.* Further, "[a]lthough a district court, in sentencing a defendant for a violation of supervised release, is directed to consider the non-binding policy statements found in Chapter Seven of the Guidelines Manual, the court ultimately has broad discretion to revoke its previous sentence and impose a term of imprisonment up to the statutory maximum." *Id.* (internal quotation marks omitted). As an initial matter, we found that Pelensky did have some notice that the district court might depart from the policy statements and its grounds for doing so because the district court warned him that if he failed to complete the treatment he could face up to eleven months or longer. *Id.* However, we held that "[i]n any event, . . . the court was not required to give notice to Pelensky before imposing a sentence above the range suggested by [the Guidelines'] Chapter Seven's non-

binding policy statements."[4] *Id.* at 70. We distinguished *Burns v. United States*, 501 U.S. 129 (1991), in which the United States Supreme Court enforced the notice requirements for a sentencing departure for the then-mandatory sentencing guidelines. We indicated that the "notice requirement does not apply to deviations from the non-binding policy statements found in Chapter Seven of the Guidelines." *Pelensky*, 129 F.3d at 70. We explained that "[b]ecause these policy statements are merely advisory, the sentencing court is not 'departing' from any binding guideline when it imposes a sentence in excess of the range recommended by the Chapter Seven policy statements." *Id.* at 70-71. "When imposing a sentence for violation of supervised release, the court is bound only by the statutory maximum imposed by Congress, and is therefore under no obligation to provide notice to defendants of its intent to exceed the non-binding sentencing ranges recommended in Chapter Seven of the Guidelines." *Id.* at 71. The question remains, however, whether our holding in *Pelensky* with respect to notice stands post-*Booker*. We hold, for reasons explained below, that it does.

In 2005, the United States Supreme Court decided *Booker* and "significantly altered the federal sentencing regime, essentially by making the federal sentencing guidelines advisory instead of mandatory." *United States v. Carlton*, 442 F.3d 802, 808 (2d Cir. 2006). Subsequently, this Court determined that a defendant must receive notice and an opportunity to comment on matters relating to a sentence when the judge *sua sponte* imposes a non-Guidelines

---

[4] Though it may be argued that this was dicta, it was not. The determinative factor in *Pelensky* was that "[t]he district court was not required to provide notice to Pelensky of its intent to sentence him to a term in excess of the range recommended by the non-binding policy statements contained in Chapter Seven of the Sentencing Guidelines." *United States v. Pelensky*, 129 F.3d 63, 71 (2d Cir. 1997). Thus, that Pelensky received some notice was irrelevant to the result.

sentence.  *See United States v. Anati*, 457 F.3d 233, 236 (2d Cir. 2006).

Appellant argues, *inter alia*, that a "harmonization of sentencing based on guidelines and policy statements" has occurred within our jurisprudence since *Booker* and in conjunction with *Anati*.  *See* Appellant Reply Br. 6-8.  *Booker* has changed certain aspects of sentencing, and, in some ways, the once-binding sentencing guidelines now may seem more like the policy statements applicable to the revocation of Altman's supervised release.  As mentioned, the Guidelines are now advisory.  The pre-*Booker* test for reviewing sentences for supervised release violations now closely resembles the standard we use post-*Booker* to review all sentences.  *Compare Pelensky*, 129 F.3d at 69 ("In the absence of an applicable guideline, we will uphold the district court's sentence if (1) the district court considered the applicable policy statements; (2) the sentence is within the statutory maximum; and (3) the sentence is reasonable." (internal quotation marks omitted)), *with United States v. Rattoballi*, 452 F.3d 127, 131-32 (2d Cir. 2006) (stating that we review sentencing decisions for reasonableness, two components of which are "(1) procedural reasonableness, whereby we consider such factors as whether the district court properly (a) identified the Guidelines range supported by the facts found by the court, (b) treated the Guidelines as advisory, and (c) considered the Guidelines together with the other factors outlined in 18 U.S.C. § 3553(a); and (2) substantive reasonableness . . . ."  (footnote omitted)).  Further, appellant correctly notes that the standard of review that we use to evaluate a sentence pursuant to a policy statement has changed from "plainly unreasonable" to simply one of "reasonableness," the latter being the same standard of review for all sentences.  *See United States v. Lewis*, 424 F.3d 239, 243 (2d Cir. 2005).  However, none of this compels us to conclude that the differences between policy statements and the once-binding sentencing guidelines are

8

now illusory.

Though we need not opine on the extent of the differences between policy statements and the previously mandatory sentencing guidelines, we note that our jurisprudence, even post-*Booker*, continues to recognize differences between initial sentencing and revocation of supervised release, more broadly, and, in at least one instance, differences between policy statements and sentencing guidelines, more specifically. With respect to the former, we have observed that "[t]his Court considered the supervised release scheme generally in the wake of *Booker* . . . and conclude[d] that supervised release remain[ed] unaffected by *Booker*." *United States v. McNeil*, 415 F.3d 273, 276 (2d Cir. 2005) (citing *United States v. Fleming*, 397 F.3d 95, 97-99 (2d Cir. 2005)). We have drawn a sharp divide between initial sentencing and the revocation of supervised release with respect to the protections and safeguards available to the individual. In *Carlton*, we rejected constitutional challenges to the procedure for the revocation of supervised release pursuant to 18 U.S.C. § 3583(e)(3). We commented that the reason the defendant's punishment under § 3583(e)(3) was "qualitatively different from a bank robbery conviction obtained in the normal course of a criminal trial [] is that a sentence of supervised release by its terms involves a surrender of certain constitutional rights [including certain] due process rights . . . . The full panoply of procedural safeguards does not attach to the revocation proceedings . . . ." *Carlton*, 442 F.3d at 809.

We have also continued to distinguish between policy statements and sentencing guidelines. In *Lewis*, we noted in the context of revocation of supervised release that although the judge had to state the reasons for a particular sentence, "a court's statement of its reasons for going beyond non-binding *policy statements* in imposing a sentence after revoking a defendant's

9

supervised release term need not be as specific as has been required when courts departed from *guidelines* that were, before *Booker*, considered to be mandatory." 424 F.3d at 245. *See also United States v. Goffi*, 446 F.3d 319, 322 (2d Cir. 2006) (noting that a sentencing court must consider "non-binding policy statements applicable to probation violations [] in determining an appropriate sentence. Nowhere, however, does it require a court to sentence within the Guidelines range for the underlying conviction in determining punishment for separate and distinct malfeasance by the defendant – violation of probation").

This case, we believe, presents a situation in which a distinction continues to be warranted. As we noted in *Pelensky*, the policy statements related to violations of supervised release were advisory in 1997, and remain so today. As the status of those policy statements has not changed, we do not believe that *Anati* requires us to conclude that a district court must provide notice before imposing *sua sponte* a sentence outside the recommended range in the context of revocation of supervised release. *Anati* sought to give vitality to the notice and comment requirements of Federal Rule of Criminal Procedure 32(i)(1)(C) in light of the district court's continued obligation to consider the appropriate Guidelines range in determining a procedurally and substantively reasonable sentence. *Anati*, 457 F.3d at 236. The notice requirement continues to make sense in the initial sentencing context, but does not, thereby, extend automatically to the context of revocation of supervised release.

Altman was not entitled to notice in this instance.[5] He was initially sentenced in accordance with the law. He was also punished for violating the terms and conditions of his

---

[5] Because we conclude that Altman was not entitled to notice, we need not resolve the standard of review applicable to this case.

10

original sentence. In this context, the district court judge was advised of a recommended sentencing range by the applicable policy statements but was not in any way bound by that suggestion. The length of the new sentence was solely a function of the district court judge's discretion given the facts found or admitted following the appropriate procedures for establishing Altman's violation of the terms of his supervised release.

*Anati* does not alter *Pelensky*'s holding that a defendant is not entitled to notice when a district court imposes *sua sponte* a sentence for revocation of supervised release that is outside the range recommended by the applicable Guidelines policy statements.[6] We also note that post-*Booker*, the Ninth and Tenth Circuits appear to have reached the same conclusion, though relying mainly on past decisions in their respective jurisprudence. *See United States v. Leonard*, 483 F.3d 635, 638-39 (9th Cir. 2007); *United States v. Shields*, 221 Fed. App'x 787, 788-89 (10th Cir. 2007) (unpublished). Altman was not entitled to notice in this situation.

**Conclusion**

For the reasons stated above, the sentence imposed by the district court is hereby AFFIRMED.

---

[6] Though notice is not mandatory, it is prudent to give such notice, especially in situations in which the court is relying on information that is either new or not obvious when determining the sentence.