**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Alcee J. LeBLANC, Defendant–
Appellant.**

**No. 97–3994.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 13, 1998.

Decided April 21, 1999.

Rehearing Denied May 21, 1999.

Daniel P. Bach (argued), Peggy A. Lautenschlager, Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Howard B. Eisenberg (argued), Milwaukee, WI, for Defendant–Appellant.

Before CUMMINGS, ROVNER and DIANE P. WOOD, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Alcee LeBlanc pled guilty in 1994 to possession of stolen property, in violation of 18 U.S.C. § 2315. The district court sentenced him to twelve months of incarceration, followed by three years of supervised release. LeBlanc served his prison term, and had successfully completed two years and five months of the supervision period when he was arrested and charged with being a felon in possession of a weapon. The government petitioned for revocation of LeBlanc's supervised release. When LeBlanc appeared in court, his counsel represented that he was willing to stipulate to the firearms charge, and was willing to waive his right to a full revocation hearing under Federal Rule of Criminal Procedure 32.1. The court obliged and sentenced LeBlanc to twenty-four months of additional incarceration, the maximum allowed by the statute. *See* 18 U.S.C. § 3583(e)(3). LeBlanc now appeals, challenging the sufficiency of the evidence against him, and citing due process violations he claims occurred at the revocation hearing. He asks that the case be remanded for a new revocation hearing, or in the alternative that it be remanded for a new sentencing hearing. We agree that the proceedings were fatally flawed, and we reverse and remand for a new revocation hearing.

## I.

On October 14, 1997, LeBlanc's probation officer petitioned the court for an arrest warrant and revocation of supervision, based on violations of three conditions of supervision. Namely, LeBlanc violated Standard Condition # 1, that he not commit another federal, state or local crime, when he was arrested on October 12, 1997, for being a felon in possession of a firearm. Also in support of a violation of Condition # 1, the petition charged that LeBlanc had been arrested on September

14, 1997, for battery, criminal damage to property, resisting arrest, disorderly conduct, and driving while intoxicated. Standard Condition # 8 required LeBlanc to refrain from the excessive use of alcohol, among other things, a condition violated on September 14, 1997, when he registered a blood alcohol content of .23 percent. Finally, he violated Standard Condition # 15, that he not possess a firearm, when he was found in possession of a shotgun and three shotgun shells on October 12, 1997. On that day, according to the petition, LeBlanc threatened to shoot himself and another person.

At a hearing to set a date for the revocation proceedings, the government alerted the court that no revocation hearing was necessary because LeBlanc had agreed to stipulate to a Grade B violation of his probation conditions. Specifically, he would stipulate to being a felon in possession of a firearm on October 12, 1997, in violation of state law. The government further informed the court that it could not establish a Grade A violation because it could not prove that this particular firearm travelled in interstate commerce, a requirement for proving a violation of Standard Condition # 15.[1] Thus, the government relied on LeBlanc's violation of Standard Condition # 1, and admitted it could not prove the more serious violation of Standard Condition # 15. LeBlanc's attorney concurred with the government's portrayal of events, and explained that the parties had reached agreement only moments before entering court.

The court then allowed the government an opportunity to enter into the record an offer of proof relating to that violation. The government stated that it would have called Donna LeBlanc, the defendant's wife, to testify. Donna LeBlanc would have testified that on October 12, 1997, LeBlanc called her several times from the home of his friend Oburr Sperle. During one of the calls, LeBlanc told her he wanted her to hear something, and she then heard a loud bang. LeBlanc said he was practicing with a 12 gauge shotgun, and he was going to blow his head off. Donna LeBlanc would have further testified that he called again later that day and told her he only had one shell left from the five he had originally. When she questioned whether Sperle owned any guns, LeBlanc responded that he kept "a lot of them under his bed." She then called the police and directed them to Sperle's house.

The government stated that it would have next called a Dane County deputy sheriff, who would have testified that he went to Oburr Sperle's house, and found LeBlanc there, smelling strongly of alcohol. LeBlanc submitted to a blood alcohol test, and the sheriff found his blood alcohol was .23 percent. The sheriff found three unexpended shotgun shells on the kitchen counter, and a 16 gauge shotgun under Sperle's bed. The sheriff would have testified that he spoke with Sperle, and Sperle stated there was no reason for there to be shotgun shells laying around the house, that he had not used his gun for years, and that he did not know LeBlanc was at his house that day. The sheriff would have testified that he arrested LeBlanc that day on the charge of being a felon in possession.

After the government made this offer of proof, the court asked LeBlanc if he agreed with the government's statement. LeBlanc responded, "Yes, sir." The court then asked whether he disagreed with any part of the statement. LeBlanc again responded, "Yes, sir." When asked to explain his objection, LeBlanc first clarified

---

1. Standard Condition # 15 specifies that "[c]onvicted felons shall not receive, possess, or transport in commerce or affecting commerce any firearm, as defined in 18 U.S.C. § 922(g), including any hand gun, rifle or shotgun." Because of the reference to section 922(g), the government would have to prove that the firearm travelled in interstate commerce in order to show that LeBlanc violated this condition. The government informed the court that it had no such proof in this case because it had been unable to verify any facts about this particular shotgun.

that the "shells" were really just plastic tubing with brass caps, and had never been filled with gunpowder or buckshot. He also denied touching the gun, and explained that, in fact, he did not know it was in the house. The government, on hearing this denial, posited that LeBlanc was not prepared to stipulate to the offense conduct after all. LeBlanc interjected, "Oh, no, I am but I just wanted to get that on the record also that ... my fingerprints—". At this point, the court interrupted and stated, "We will go with the Class A violation and if you wish to have an expert come in I'll set this over for a week for the hearing relating thereto." The government again expressed doubt that it could prove a Class A violation because it could not show that the gun travelled in interstate commerce. The government even doubted whether proof of the gun travelling in interstate commerce (which would make LeBlanc's conduct a federal offense) would be enough to constitute a Class A violation.

The court attempted to clarify LeBlanc's position, asking whether he was in possession of a 16 gauge shotgun. LeBlanc replied that he admitted to the possession, but simply wanted clarification of "what is meant by possession." After this "admission," the government questioned whether LeBlanc understood the charge against him, and whether he was admitting to actual or constructive possession. LeBlanc's attorney explained that he was willing to stipulate to constructive possession, and that her client simply did not understand the procedure for the hearing. The court again attempted to question LeBlanc on the record about the charge of possession, without explaining, however, the terms "possession" and "constructive possession." LeBlanc confirmed that he was present at Sperle's house, that there were three shotgun shells at the house, that he understood he was being charged under state law with being a felon in possession of a firearm, and that he was "in possession" of the shotgun when he called his wife on October 12, 1997. He also

admitted he told his wife he was practicing with a shotgun and was going to blow his head off. Finally, he admitted that the shotgun was in Sperle's house at the time he spoke with his wife. The government asked that LeBlanc clarify that he knew the shotgun was at Sperle's house, and LeBlanc obliged.

The court then accepted the stipulation, revoked LeBlanc's supervised release, and asked for argument on sentencing. Both sides were apparently under the impression that the maximum sentence for a Grade B violation was 18 months, and argued accordingly. Much to everyone's surprise, the court found the 18 months inadequate and sentenced LeBlanc to 24 months incarceration, the maximum allowed by statute. In explaining the sentence, the court cited the September 14, 1997 incident, when a drunken LeBlanc apparently went to the home of his in-laws, where his wife was staying, and accosted his brother-in-law. The court told LeBlanc that his attorney and "the government's stipulation have saved you from substantially a greater period of incarceration, for had it been a Grade A violation you would have had a further period of sentencing by this Court."

## II.

LeBlanc's original attorney filed an *Anders* brief with this Court, stating that there were no non-frivolous matters to pursue on appeal, and requesting that she be allowed to withdraw from further representation. *See Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Although we allowed the attorney to withdraw, we rejected the *Anders* brief because we believed it raised non-frivolous issues. We appointed new counsel and directed the parties to brief whether a waiver of rights under Federal Rule of Criminal Procedure 32.1 need be knowing and voluntary. *See United States v. LeBlanc*, No. 97–3994 (7th Cir. July 24, 1998). On appeal, *LeBlanc*, through his

new counsel, raises three issues. First, he contends that insufficient evidence was adduced at the hearing to support the revocation of supervised release. Second, he maintains that his right to due process was violated at the revocation hearing. Finally, he posits that his sentence should be vacated because the court relied upon information that was not properly before it.

### A.

We turn first to the issue of whether a waiver of rights under Rule 32.1 must be knowing and voluntary, an issue LeBlanc correctly framed in due process terms. Rule 32.1 provides that a person in custody for violating a condition of probation is entitled to both a preliminary probable cause hearing and a revocation hearing. Fed.R.Crim.Pro. 32.1(a)(1) and (a)(2). The rule specifies that the revocation hearing may be waived, but if it is not, the person should be given written notice of the alleged violation, disclosure of adverse evidence, an opportunity to appear and present evidence, the opportunity to question adverse witnesses, and notice of the right to be represented by counsel. The rule was largely a codification of *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), which first held that due process required a preliminary hearing and a revocation hearing for a person facing revocation of parole. The Supreme Court extended this holding to probationers in *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

█ Two circuit courts have considered whether a waiver of the right to a revocation hearing need be knowing and voluntary, and they have both concluded that it must. *See United States v. Pelensky*, 129 F.3d 63, 68 n. 9 (2d Cir.1997) (a defendant's waiver of Rule 32.1 rights must actually be knowing and voluntary); *United States v. Stocks*, 104 F.3d 308, 312 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 259, 139 L.Ed.2d 186 (1997) (a waiver of Rule 32.1 rights must be knowing, intelligent and voluntary). The Ninth Circuit explained that the Supreme Court developed a core of constitutionally protected rights tailored to the probation and parole contexts, and that these rights arose out of two related interests: a probationer's interest in receiving assistance of counsel when revocation implicates re-sentencing, and more generally, a probationer's and parolee's interest in remaining free of the restrictions on liberty that are imposed as part of the probationary or parole term. *Stocks*, 104 F.3d at 311. The Ninth Circuit reasoned that because of the importance of these interests, any waiver of Rule 32.1 rights should be knowing, intelligent and voluntary. We join the Ninth and Second Circuits today and hold that a waiver of the right to a revocation hearing must be knowing and voluntary.

### B.

█ We next address whether LeBlanc's waiver was knowing and voluntary, in the context of his very confused colloquy with the court. We note that neither the Ninth nor the Second Circuit requires a district court to impose the formalistic procedures associated with Rule 11 to a waiver of Rule 32.1 rights.[2] *See Pelensky*, 129

---

**2.** Federal Rule of Criminal Procedure 11 governs pleas and plea agreements. The Rule requires the district court to address the defendant personally in open court to determine that the defendant understands the nature of the charge, the minimum and maximum possible penalties provided by law, and various rights. Specifically, the court must inform the defendant about the right to an attorney, the right to plead not guilty, the right to trial by jury, the right to confront and cross-examine adverse witnesses and the right against compelled self-incrimination. The court must inform the defendant that a guilty plea results in a waiver of the right to trial, and that any answers the defendant gives to the court under oath, on the record and in the presence of counsel may later be used against the defendant in a prosecution for perjury or false statement. The Rule also requires that the court insure that the plea is voluntary and not the result of force or threats or of promises

F.3d at 68 (formal Rule 11 colloquy would be ill-suited to the context of supervised release proceedings); *Stocks*, 104 F.3d at 311 (parolee entitled only to notice of alleged parole violations, an opportunity to appear and present evidence, a conditional right to confront government's witnesses, an independent decision-maker, and a written report of the hearing). In fact, we are unaware of any court holding that a Rule 11 colloquy would be required at a probation or parole revocation. *See United States v. Rapert*, 813 F.2d 182, 184 (8th Cir.1987) (stating that all of the circuits that have addressed the question have held that Rule 11 was inapplicable to a parole revocation hearing, and collecting cases). We agree that a revocation hearing need not contain all of the procedural protections of a Rule 11 hearing.

But LeBlanc asks for something less than a Rule 11 colloquy. He argues that in order for his waiver to be knowing and voluntary, the court should have informed him of the charges against him and the maximum possible sentence. At oral argument, he proposed that the following statement by the court would have adequately protected his rights:

> You are charged with constructive possession of a weapon, and that means that you knew the weapon was under Mr. Sperle's bed, that you could go and get it, and you intended to get it. And furthermore, if I find that you violated the conditions of your supervised release, I am empowered by statute to sentence you to up to 24 months in prison. And although the parties have agreed to recommend 18 months, I'm not bound by that, and I'm not bound by the suggestions in the Guidelines Manual. I can sentence you up to 24 months.

LeBlanc contends that the hearing did not meet this standard, and was deficient in two respects. First, the colloquy reveals that LeBlanc did not understand the

basis of the charge against him. He did not understand what was meant by constructive possession, and when he asked the court for clarification of that term, none was forthcoming. Second, he contends the court misled him as to the maximum sentence that could be imposed. LeBlanc also complains that the voluntariness of the waiver was vitiated by the district court's wrongful threat to hold a hearing on a Grade A violation, which would, according to the court, result in a higher sentence.

The government contends that less caution is necessary in determining whether a Rule 32.1 waiver is knowing and voluntary than is needed in the guilty plea context. Because the standard of proof at a revocation hearing is a preponderance of the evidence, the government asserts that the consequence of an involuntary waiver of Rule 32.1 rights is "not as dramatic a constitutional deprivation" as an involuntary guilty plea. LeBlanc's waiver was knowing and voluntary, the government explains, because he understood he was being charged with possession, "a simple term requiring no further definition for understanding by a layman." According to the government, LeBlanc "unequivocally" admitted to actual possession during the colloquy, and his failure to comprehend constructive possession is therefore irrelevant. Moreover, the government continues, LeBlanc understood the maximum sentence he faced because the district court informed him it was not bound by the parties' agreement or the Guidelines suggestions, but could impose a longer sentence. Finally, the government maintains that nothing in the record supports LeBlanc's assertion that his decision to waive his Rule 32.1 rights was influenced by a mistaken understanding of the implications of a Grade A versus a Grade B violation.

apart from a plea agreement. The Rule details extensive procedures for reaching a valid

plea agreement.

In order to determine whether a Rule 32.1 waiver is knowing and voluntary, the district court should consider the totality of the circumstances in which the waiver occurred. In assessing the totality of the circumstances, the court may consider, among other things, whether the defendant understands the charge against him and the possible sentence. The court may also consider whether the defendant understands the procedures he foregoes when he relinquishes his right to a Rule 32.1 hearing. The record here demonstrates that LeBlanc did not fully understand any of these facts before he stipulated to a violation of the conditions of his probation. Contrary to the government's assertion, LeBlanc did not "unequivocally" admit to anything. Indeed, he equivocated nearly every time he addressed the court, first admitting facts, then retracting his statements and asking for clarification. Although in some parts of the record, he admitted "possessing" the firearm, he also clearly stated that he never touched the shotgun, and that he did not even know it was in Sperle's house. Those statements would be inconsistent with both actual and constructive possession. After LeBlanc expressed confusion about the term "constructive possession," his attorney stated it was constructive possession that her client was admitting. And yet, the court never defined this term for LeBlanc.[3] At most, LeBlanc stipulated to a legal conclusion, using words that he indicated on the record he did not understand. He did not understand the charge against him.

Nor did he understand the possible penalty he faced by stipulating to a violation of the conditions of his probation. The district court told LeBlanc that the Guideline range was "between 12 and 18 months" but that the court could depart upward if it felt that was appropriate. The court later informed LeBlanc that he could be sentenced "up to 18 months" and the court could also depart upward for a "further period of imprisonment." When LeBlanc addressed the court, he asked the court not to sentence him to the "full 18 months," indicating his understanding of the upper end of the spectrum, and no one corrected him. During sentencing, the district judge explained that he was "departing" upward from 18 months to 24 months because 18 months was far too little to significantly deter similar conduct in the future. The judge admonished LeBlanc that his attorney and the government's stipulation saved him "from substantially a greater period of incarceration, for had it been a Grade A violation [LeBlanc] would have had a further period of sentencing." Transcript of Judicial Review before the Honorable John C. Shabaz, November 7, 1997, at 23.

This last statement was simply incorrect. By statute, LeBlanc's sentence was capped at 24 months whether the violation was Grade A or Grade B. *See* 18 U.S.C. § 3583(e)(3). The court should have told LeBlanc that the maximum sentence was 24 months, rather than telling him it was between 12 and 18 months, with a nebulous possibility for something more. Moreover, the court should not have implied to LeBlanc that a Grade A violation would result in a higher sentence, and that the court would proceed to a hearing on a Grade A violation if LeBlanc failed to stipulate to a Grade B violation. Such a

---

3. The meaning of the term "constructive possession" is not intuitive to the layperson. Indeed, when the government thought it was going to trial on the original charges against LeBlanc (possession of stolen property), it proposed a jury instruction defining the terms actual and constructive possession: "A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it. A person who, although not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it." *See* Government's Requested Instruction No. 3, Record 38, at 4. *See also* Richard J. Posner, *Judges' Writing Styles (And Do They Matter?)*, 62 U. Chi. L.Rev. 1421, 1438 (1995) ("'Constructive possession' is actually a rather tricky concept. . . .").

threat was improper for two reasons. First, it was factually incorrect because, as we just noted, the maximum sentence was the same for either Grade violation. Second, the government had informed the court that it could not prove a Grade A violation because it could not show that the weapon had travelled in interstate commerce. Given this misinformation and LeBlanc's confusion regarding the maximum possible sentence, in combination with the court's failure to explain the constructive possession charge when the defendant expressed confusion, we cannot say that Le-Blanc knowingly and voluntarily waived his Rule 32.1 rights. We therefore reverse and remand for proceedings consistent with this opinion.

### C.

LeBlanc moved on appeal to strike portions of the government's supplemental appendix on the ground that it contained material that was not part of the record below. The materials included a probation violation worksheet completed by Le-Blanc's probation officer, a police incident report relating to the September 1997 altercation, a jail booking form, and a criminal complaint detailing the October 1997 firearm possession incident. After Le-Blanc filed this motion, the government moved in the district court to amend the record on appeal to include this material, and the district court granted that motion shortly before we heard oral argument in this case. Upon learning that the district court relied on this material in revoking LeBlanc's probation and sentencing him, LeBlanc filed a Statement Withdrawing Motion to Strike and Supplemental Memorandum in Light of District Court's November 12, 1998 Ruling. In the Supplemental Memorandum, LeBlanc argued that the court's use of that material was one more reason to reverse, because the material was never disclosed to the defendant, in violation of Federal Rule of Criminal Procedure 32. Because the documents were not included in the presentence re-

port, LeBlanc claims, he was denied an opportunity to respond to them.

According to the government, the record on appeal would be supplemented with these materials following the district court's ruling on November 12, 1998. Our review of the record shows that the materials were not delivered to this Court at any time. Certainly, the government ought not to have attached materials to its brief that were not part of the record below. However, in light of our ruling above, all of this is moot. On remand, these materials should be provided to the defendant for use in any revocation hearing. Circuit Rule 36 shall apply on remand.

REVERSED AND REMANDED.