2012 COA 38

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Dallas Jeffrey FINNEY, Defendant–Appellant.**

**No. 09CA1949.**

Colorado Court of Appeals, Div. VII.

March 15, 2012.

John W. Suthers, Attorney General, John D. Seidel, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Rebecca R. Freyre, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge BERNARD.

¶ 1 Section 18–1.3–102(1), C.R.S.2011, allows the prosecution and the defendant to agree, with the approval of the court, to defer the judgment and sentence in a criminal case after a defendant has entered a guilty plea. As is the case with all guilty pleas, the court must advise the defendant of the potential penalties for the offense. This is important because the defendant may face those penalties if the conditions of the deferred judgment agreement are not honored and the court revokes the agreement.

¶ 2 This appeal involves, among other things, an issue that arises out of the procedures employed when revoking a deferred judgment agreement. Our supreme court has held that a statute requires a court to inform a defendant in such circumstances of the possible penalties he or she may face. We are now asked to determine whether Crim. P. 11 independently requires such an advisement in a case, such as this one, in which the defendant has expressly waived a formal advisement and in which the defendant was repeatedly informed of the potential penalties. We conclude that Crim. P. 11 does not apply under these circumstances. As a result, we affirm the trial court's decision to deny defendant's postconviction motions, and we remand for correction of the mittimus only.

## I. Background

¶ 3 In 2003, defendant, Dallas Jeffrey Finney, was charged with three counts of class three felony sexual assault and three counts of class four felony sexual assault. This case has a lengthy and complicated procedural history, including the involvement of five different judges. We provide a chart for the reader's convenience at the end of this background section that briefly describes, in chronological order, what each judge did.

¶ 4 In July 2004, defendant entered into a plea disposition, in which he would plead guilty to one of the class four felony sexual assaults before the first judge. The sentence and judgment for that offense would be deferred for four years, and defendant would be supervised by the probation department. If he satisfied the conditions of the agreement for four years, he would be allowed to withdraw his guilty plea and all charges against him would be dismissed.

¶ 5 The written plea advisement, which defendant signed, stated that the penalties for the offense were "2 years to life imprisonment … with mandatory 3 years parole." The first judge presided over the entry of the guilty plea. During the colloquy concerning the plea, defendant stated that he had read the written advisement, and that he understood it. The first judge also informed him that the possible penalties for the offense were "a [prison] sentence of from two years to life imprisonment … [and] a three year mandatory period of parole."

¶ 6 In August 2004, the probation department prepared a presentence report. It stated that the possible penalties for the offense were "2 years to lifetime imprisonment" and recommended that the judgment be deferred.

¶ 7 In September 2004, defendant appeared for sentencing before the second judge. The second judge stated that he would not accept the plea agreement. Defendant withdrew his guilty plea, and the case was reset for trial.

¶ 8 In November 2004, defendant filed a motion to enforce the original plea disposition agreement, which was heard by a third judge. The third judge denied the motion. Defendant then entered into a second deferred judgment agreement. This one required him to plead guilty to one count of class four felony sexual assault, plus one count of class three misdemeanor harassment. Judgment and sentence on the felony would be deferred, but the conviction on the misdemeanor would remain on his record.

¶ 9 The third judge advised defendant of the possible penalties for the felony, which he described as a maximum of life imprisonment, "plus three years of mandatory parole." Defendant said he understood the possible penalties. When asked whether he wished to plead guilty "[k]nowing the possible penalties and places of confinement," defendant responded, "Yes."

¶ 10 The third judge accepted the deferred judgment agreement, and then asked defendant if he wished to make a statement "in mitigation [of the] offense." Defendant stated that he did not commit the crime. Based on this statement, the third judge then refused to accept the plea. After consulting with plea counsel, defendant decided that he did not wish to accept the plea agreement, and so the case was set for trial.

¶ 11 Defendant entered a third guilty plea before a fourth judge in February 2005. He pled guilty to one count of class four felony sexual assault and one count of class one misdemeanor third degree assault. The conditions of the agreement included deferring judgment for four years for the felony; requiring him to serve ninety days in jail; putting him under the supervisory authority of the probation department; ordering him to submit to sex offender testing and treatment; and placing him on probation for two years for the misdemeanor, to be served concurrently with the period of deferred judgment on the felony.

¶ 12 When defendant entered this guilty plea, the fourth judge advised him that the penalty for the class four felony was two years to life imprisonment, plus three years of mandatory parole. Although the written plea agreement that defendant signed con-

tained the same information, defendant also signed supplemental attached paperwork stating that the mandatory period of parole was ten years to life. When the court asked him whether he understood that "those penalties would not apply unless [he] violated" the deferred judgment agreement, defendant replied that he did.

¶ 13 In response to questions from the court, defendant stated that he had read the written agreement; plea counsel had explained it to him; he understood it; he understood the alternatives he had to entering into the agreement; there were no additional promises or commitments that were not included in the written agreement; he was satisfied with plea counsel's representation; no one had coerced him to accept the agreement; and the decision to accept the agreement had been his alone.

¶ 14 In June 2008, the prosecution moved to revoke the deferred judgment agreement. The complaint from the probation department alleged that defendant had violated one of the agreement's conditions because the organization that was providing him sexual assault-specific treatment had terminated him from its program.

¶ 15 Appearing before the second judge in early August 2008, plea counsel waived any advisement and requested a continuance "to explore [defendant's] options." At the end of August 2008, plea counsel appeared before the second judge and waived any further advisement on the complaint and requested a dispositional hearing. Defendant attended both hearings at which these statements were made.

¶ 16 In September 2008, defendant appeared before the second judge and admitted that he had violated the deferred judgment agreement. He stated that no one had coerced him into making this admission; he had enough time to discuss the admission with his attorney; he was satisfied with plea counsel's advice; and he understood that the court would not be bound by any sentencing recommendations that the prosecutor might make.

¶ 17 The prosecutor stated that she would make a sentencing recommendation if a con-

dition were satisfied. She told the court that, according to plea counsel, the probation department would recommend that defendant be placed in a community corrections facility if one agreed to accept him. She said that she would "go along" with such a placement if the facility accepted defendant.

¶ 18 In December 2008, plea counsel and defendant appeared before a fifth judge for sentencing. Plea counsel requested that the court continue the sentencing hearing for thirty days. He stated that the community corrections facility had rejected defendant, and plea counsel wanted additional time "to see if [they] could get him in there." He told the court:

> [Y]our sentence is mandated at two [years] to life [by the deferred judgment agreement]. I don't know what I can say to this court to mitigate it. This is a sentence basically sentencing this man to life in prison, and we asked for a 30–day continuance to go over the pre-sentence report with him, and that's what I'm asking the court once again to do.

¶ 19 When asked if he wished to address the court before it imposed sentence, defendant stated that he felt he had complied with the conditions of the deferred judgment agreement. He added that he found out two days before Thanksgiving that the community corrections facility had rejected him, and "[N]ow I'm going to go to prison for the rest of my life."

¶ 20 The parties and the court had been supplied with an updated probation report. It stated that, because the deferred judgment agreement had been revoked, the possible penalties were a prison sentence of two years to life, "a mandatory 3 year period of parole," and a fine.

¶ 21 The fifth judge denied the request for a continuance, and imposed the prison sentence—two years to life—that was contained in the deferred judgment agreement.

¶ 22 Defendant filed postconviction motions in which he contended that (1) the second judge denied him due process by not advising him, before he admitted violating the conditions of the deferred judgment agreement, that he faced a sentence of two years to life imprisonment; (2) the fifth judge denied him his rights to due process, to present a defense, to confront witnesses, and to effective assistance of plea counsel by denying his request to continue the sentencing hearing; (3) plea counsel's representation during the deferred judgment revocation process was constitutionally deficient; and (4) he should be resentenced to probation.

¶ 23 The second judge conducted a hearing on the motion that spread over two days in July and August 2009. After listening to the testimony and considering the attorneys' offers of proof and arguments, the second judge denied defendant's postconviction motions.

II. Defendant Waived His Statutory Right to Be Advised of the Possible Penalties He Faced Before He Admitted Violating the Deferred Judgment Agreement

A. Preliminary Issues

■ ¶ 24 We must resolve three preliminary issues. First, defendant contends that this appellate proceeding is both (1) a direct appeal from the second and fifth judges' decisions to revoke the deferred judgment agreement and to sentence him to prison; and (2) an appeal from the second judge's decision to deny his postconviction motions. Because defendant did not file a direct appeal within forty-five days of the fifth judge's sentencing order, *see* C.A.R. 4(b), we conclude that the time for filing a direct appeal has lapsed. Therefore, we only consider here the issues raised in defendant's appeal from the second judge's decision to deny his postconviction motions.

■ ¶ 25 Second, defendant submits that we should consider, as plain error, his claim that the fourth judge—as well as the first and third judges—improperly advised him

that the mandatory period of parole following any prison sentence would be three years. However, we shall not consider the claim because defendant did not raise it below. *See People v. Goldman*, 923 P.2d 374, 375 (Colo.App.1996)("Allegations not raised in a Crim. P. 35(c) motion or during the hearing on that motion and thus not ruled on by the trial court are not properly before this court for review.").

¶ 26 Although defendant argued during the postconviction hearing that the second judge should have advised him in 2008 of the possible penalties he faced if the deferred judgment agreement were to be revoked, defendant did not attack the fourth judge's 2005 advisement about the penalties at all. Thus, because defendant did not raise the issue in the trial court that he was improperly advised when he entered into the deferred judgment agreement, this argument is not properly before us.

¶ 27 Third, the prosecution argues that defendant did not preserve the argument that the federal constitution's Due Process Clause required the second judge to advise him of the possible penalties he faced before proceeding to revoke the deferred judgment agreement. We disagree.

¶ 28 Here, defendant raised this issue during the postconviction hearing. Postconviction counsel's statement that he did not intend to argue the issue "very vociferously" did not abandon this issue. And the trial court found that defendant validly waived his right to a hearing on the deferred judgment violation. Thus, this issue was raised and ruled upon below, and so we shall address it here.

### B. General Principles

¶ 29 In order to resolve a criminal case with an agreement that the defendant's judgment and sentence will be deferred, the prosecutor and the defendant must provide the court with a written and signed stipulation that sets forth the conditions of the agreement. § 18–1.3–102(2), C.R.S.2011. This stipulation serves an important purpose: it makes clear that the defendant understands, before entering a guilty plea, the consequences of violating the agreement. *People v. Widhalm*, 642 P.2d 498, 500 (Colo. 1982).

¶ 30 In proceedings to revoke deferred judgment agreements, defendants "are not entitled to the full range of constitutional guarantees afforded to defendants in criminal prosecutions." *People v. Allen*, 973 P.2d 620, 622 (Colo.1999). Rather, they are only entitled to "the same procedural safeguards as [defendants] in [proceedings] to revoke probation." *Id.* at 623; § 18–1.3–102(2) ("[T]he procedural safeguards required in a revocation of probation hearing shall apply.").

¶ 31 The procedural safeguards that apply in probation revocation hearings include *statutory* rights, such as the right to have the court advise "the probationer of the charges against him and the possible penalties therefor." § 16–11–206(2), C.R.S.2011; *see also* Crim. P. 32(f)(2) (same). Counsel may waive a defendant's *statutory* rights. *See People v. Allen*, 744 P.2d 73, 74 n. 2 (Colo.1987), *superseded by* § 18–1–405(5.1), C.R.S.2011, *on other grounds as recognized in People v. Newton*, 764 P.2d 1182, 1188 (Colo.1988); *People v. Chavez*, 791 P.2d 1210, 1211 (Colo.App.1990).

¶ 32 For example, even if a waiver of the reading of an information were required, *see* Crim. P. 10(e) ("If the defendant appears with counsel [at an arraignment] the information or indictment need not be read and no waiver of said reading is necessary."), it could be waived, *see Minich v. People*, 8 Colo. 440, 442–45, 9 P. 4, 5–7 (1885) (reading of indictment to the defendant may be waived by counsel; requirement that the defendant be provided with a copy of it serves the function of reading it in open court). Indeed, a defendant may plead guilty "personally or by counsel," Crim. P. 11(a), and a guilty plea entered by counsel is not defective if the court also makes the determinations required by Crim. P. 11(b). *See Marler v. People*, 139 Colo. 23, 27–29, 336 P.2d 101, 103–04 (1959) (strict compliance with "ancient formalities" of arraignment is not required, and a guilty plea entered by counsel is sufficient); *People v. Turley*, 18 P.3d 802, 806

(Colo.App.2000) ("Early in the development of the criminal law, much emphasis was placed upon the rigid formalities of the arraignment and the taking of a plea. However, such has never been the rule in Colorado.").

¶ 33 Here, defendant argues that the Constitution's Due Process Clause required that the second judge advise him of the penalties he faced if the deferred judgment agreement were to be revoked. We disagree that the Constitution imposes such a requirement.

### C. Application of General Principles

■ ¶ 34 Here, plea counsel, in defendant's presence, waived defendant's statutory right to be advised of the possible penalties defendant faced if the deferred judgment agreement were to be revoked. Based on our review of the record and the legal principles we have outlined above, we reach the following five conclusions.

■ ¶ 35 First, plea counsel could, on defendant's behalf, (1) waive the reading of the probation revocation complaint; (2) waive defendant's statutory and regulatory rights to be advised of the possible penalties under section 16–11–206(2) and Crim. P. 32(f)(2); and (3) enter an admission to the violation of the deferred judgment agreement. *See Allen,* 744 P.2d at 74 n. 2; *Marler,* 139 Colo. at 27–29, 336 P.2d at 103–04; *Minich,* 8 Colo. at 442–45, 9 P. at 5–7; *cf.* Crim. P. 10(e), 11(a).

¶ 36 Second, the proceedings to revoke the deferred judgment agreement focused on whether defendant would stand convicted of, and be sentenced for, the crime to which he pled guilty in February 2005. He did not face new substantive charges; he did not face new or additional penalties. When he admitted that he had violated a condition of the deferred judgment, he did not plead guilty to a new or additional crime. Thus, the constitutional due process requirements reflected in Crim. P. 11(b) did not apply here. *See Allen,* 973 P.2d at 622–23; *see also Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) ("Probation revocation, like parole revocation, is not a stage of a criminal prosecution. . . .").

¶ 37 Our reasoning here is buttressed by decisions from the First, Second, Fourth, Fifth, Seventh, Eighth, and Ninth Circuits, which have all held that the requirements of the corresponding Fed.R.Crim.P. 11 do not apply to probation revocation proceedings. *United States v. Correa–Torres,* 326 F.3d 18, 23 (1st Cir.2003) (court "emulate[s] . . . sister circuits" and holds that probation revocation proceedings do not require a "formal colloquy of the depth and the intensity" mandated by Fed.R.Crim.P. 11); *United States v. Pelensky,* 129 F.3d 63, 67–68 (2d Cir. 1997)(Fed.R.Crim.P. 11 only applies to the taking of the guilty plea, not to revoking probation); *United States v. Stehl,* 665 F.2d 58, 59–60 (4th Cir.1981) (Fed.R.Crim.P. 11 does not apply to probation revocation proceedings); *United States v. Johns,* 625 F.2d 1175, 1176 (5th Cir.1980) ("Since the appellant did not plead guilty to a criminal charge . . . and since her admission was not a 'functional guilty plea' because she faced no additional punishment or sentencing beyond that imposed upon her conviction . . . we find [Fed.R.Crim.P. 11] inapplicable to her probation revocation hearing.") (citations omitted; quoting *United States v. Hill,* 548 F.2d 1380, 1381 (9th Cir.1977)); *United States v. LeBlanc,* 175 F.3d 511, 516 (7th Cir. 1999)("agree[ing] that a revocation hearing need not contain all of the procedural protections" required by Fed.R.Crim.P. 11, but reversing because, in part, the record demonstrated that defendant was not aware of the penalties that he faced when he admitted that he violated the conditions of his probation); *United States v. Rapert,* 813 F.2d 182, 184 (8th Cir.1987) (adopting the reasoning of the Ninth Circuit in *United States v. Segal,* cited next); *United States v. Segal,* 549 F.2d 1293, 1296–1301 (9th Cir.1977) (admissions made at probation revocation proceedings are not equivalent to guilty pleas, which must be knowing, voluntary, and intelligent); *see also State v. Jones,* 128 Ariz. 378, 380, 625 P.2d 967, 969 (Ariz.Ct.App.1981) ("It was . . . unnecessary for the trial court to advise the probationer of the mandatory minimum term on the underlying conviction at the time he entered his admission of violation of the terms of his probation."); *Howlett v. State,* 295 Md. 419, 423–26, 456 A.2d 375, 377–79

(1983) (Maryland's equivalent of Crim. P. 11 is "not applicable in a probation revocation hearing").

¶ 38 We also recognize that the First, Second, Seventh, and Ninth Circuits have held that the waiver of a probation revocation hearing must be knowing and voluntary. *Correa–Torres*, 326 F.3d at 23; *Pelensky*, 129 F.3d at 67–68; *LeBlanc*, 175 F.3d at 516 (but reversing on other grounds); *United States v. Stocks*, 104 F.3d 308, 312 (9th Cir.1997).

¶ 39 Third, Crim. P. 11 does not provide a doctrinal basis for repeatedly advising a defendant facing revocation of a deferred judgment agreement of the potential penalties he or she faces if the deferred judgment agreement is revoked. *See Allen*, 973 P.2d at 622–23 (defendants in proceedings to revoke deferred judgment agreements are only entitled to the "same procedural safeguards as [defendants] in [proceedings] to revoke probation"). By its terms, Crim. P. 11 expressly applies to the entry of the guilty plea. Once its requirements are satisfied when the guilty plea is entered, there is no authority that we have found that resurrects it later in the proceedings. If the purpose of the extensive advisements required by Crim. P. 11(b) is "to facilitate an accurate determination of adequate compliance with the constitutional requirements necessary for a valid guilty plea," *People v. Chippewa*, 713 P.2d 1311, 1313 (Colo.App.1985), *aff'd*, 751 P.2d 607 (Colo. 1988), then that purpose was satisfied in this case when defendant entered his guilty plea in February 2005.

¶ 40 Fourth, defendant was carefully advised of his rights under Crim. P. 11 when he entered into the deferred judgment agreement in February 2005. He stated that he understood that the "penalties would not apply unless [he] violated" the deferred judgment agreement. He assured the court that he understood the agreement, and that he had entered into it voluntarily, knowingly, and intelligently. *See Sanchez–Martinez v. People*, 250 P.3d 1248, 1261 (Colo.2011)(satisfying the requirements of Crim. P. 11 is generally sufficient to satisfy due process).

¶ 41 Fifth, defendant was clearly advised of the potential penalties as required by Crim. P. 11(b). In fact, he was informed of

them at least five times: orally and in writing when he first pled guilty in July 2004; orally when he entered the second plea in November 2004; and orally and in writing when he entered the third plea in February 2005. Further, the original presentence report, prepared in August 2004, included a sixth description of the possible penalties. Moreover, although the December 2008 hearing was held after defendant waived his statutory right to be advised of the penalties he faced if the deferred judgment agreement were to be revoked, defendant made a statement—for a possible seventh time—indicating that he clearly understood the possible penalties.

¶ 42 Thus, looking to the record as a whole, we conclude that defendant's admission that he violated the terms of the deferred judgment agreement was valid and did not offend the Due Process Clause even though he was not readvised of the potential penalties. *See People v. Wright*, 53 P.3d 730, 732 (Colo.App.2002)(admission of probation revocation was valid even though court did not readvise defendant that he would be required to serve a period of mandatory parole); *People v. Jones*, 997 P.2d 1286, 1287–88 (Colo. App.1999) (defendant adequately advised of period of mandatory parole when guilty plea was entered; "there is nothing in the record to indicate that either the court or counsel suggested to [the defendant] at the time of his second plea that the mandatory parole of which he had previously been advised would not apply in his case").

¶ 43 Further, assuming, without deciding, that there is a requirement in Colorado that the waiver of a probation revocation hearing be knowing and voluntary, *see Correa–Torres*, 326 F.3d at 23; *Pelensky*, 129 F.3d at 67–68; *LeBlanc*, 175 F.3d at 516; *Stocks*, 104 F.3d at 312, we conclude, based on the foregoing reasoning, that such a requirement was satisfied here.

### III. Issues Arising Out of the Sentencing Hearing

¶ 44 Defendant raises two contentions about the sentencing hearing. He argues that the fifth judge (1) denied him his right

to offer mitigating evidence at the sentencing hearing when the court denied plea counsel's motion to continue the hearing; and (2) ignored mitigating evidence when he imposed sentence. We reject both contentions.

### A. Continuance

¶ 45 At the beginning of the sentencing hearing, plea counsel offered several grounds in support of the motion to continue. He stated that he had received the presentence report a few days before the hearing because the probation department sent it to the wrong address. As a result, he did not have sufficient time to discuss with defendant the decision of the community corrections board to reject defendant's placement. Plea counsel added that he wanted to conduct additional investigation into factual issues, including purported inconsistencies between the report prepared by the program that treated defendant before the deferred judgment agreement was revoked and the report of the community correction facility. In addition, he wanted to explore alternative placements to a potential prison sentence for life.

¶ 46 The decision to deny a motion for a continuance is committed to the trial court's sound discretion. We review such a decision to determine whether the court abused its discretion. An abuse of discretion occurs when the trial court's decision is manifestly arbitrary, unreasonable, or unfair. *People v. Davis*, 849 P.2d 857, 864 (Colo.App.1992), *aff'd*, 871 P.2d 769 (Colo. 1994). "The totality of the circumstances is relevant when determining whether the trial court committed an abuse of discretion by denying a continuance." *People in Interest of D.J.P.*, 785 P.2d 129, 131 (Colo.1990).

¶ 47 The court must also evaluate the "prejudice to the moving party if the continuance is denied and whether that prejudice could be cured by a continuance." *Id.* at 132. The defendant bears the burden of establishing that the denial of the continuance actually prejudiced him or her. *People v. Alley*, 232 P.3d 272, 274 (Colo.App.2010).

¶ 48 The fulcrum of defendant's argument is that the report expelling him from the treatment program contained errors and misstatements. Further, the presentence report also purportedly contained inaccurate information and some information that conflicted with the program's report. As a result, according to defendant, plea counsel should have been granted additional time to investigate the report because it figured prominently in the fifth judge's comments during sentencing. If he had been given thirty additional days, plea counsel could have subsequently presented the trial court with evidence in mitigation of defendant's punishment. If counsel had been able to present such mitigating evidence, he might have persuaded the court to place defendant on probation rather than to sentence him to prison.

¶ 49 However, after evaluating the totality of the circumstances, we conclude that defendant has not demonstrated that he was actually prejudiced by the trial court's decision to deny his request for a continuance. As a result, we further conclude that the fifth judge did not abuse his discretion when he denied that motion. Our examination of the record leads us to the following observations in support of these conclusions.

- Despite the initial routing of the presentence report to the wrong address, plea counsel received it on the Tuesday before Thanksgiving, November 25, 2008. This was six days before the December 1, 2008, sentencing hearing, or more than seventy-two hours before the sentencing hearing, *see* § 16–11–102(1)(a), C.R.S.2011, and the record does not indicate why six days would not be "[w]ithin a reasonable time prior to sentencing," Crim. P. 32(a)(2). This case is, thus, unlike *People v. Wright*, 672 P.2d 518, 521 (Colo.1983) (counsel received the presentence report ninety minutes before the sentencing hearing was set to start, and the trial court postponed the hearing for only three-and-one-half hours in response to defense counsel's request for a continuance).
- Defendant and plea counsel knew about the contents of the program's report for more than two months before the

sentencing hearing. Thus, there was sufficient time for any of the alleged irregularities or misstatements in that report to be investigated before the sentencing hearing.

- The mitigating evidence concerning the alleged irregularities or misstatements in the program's report, which defendant subsequently presented at the postconviction hearing, did not rebut several reasons for expelling defendant from the treatment program that were contained in the report. These include: (1) defendant failed the initial polygraph concerning the number of sexual contacts with the victim, and, although he passed other polygraphs, he did not complete the required number of them; (2) he failed to telephone the program to inform it of his whereabouts approximately ninety times, and he did not provide the program with addresses where he would be; (3) he missed nine group therapy sessions in the first six months of his treatment, and he missed twenty-nine sessions by the time he was terminated from the program; (4) although he was required to be employed, he quit a job because his employer would not promote him; (5) he did not take the necessary steps to be admitted into a "shared living arrangement"; and (6) he was repeatedly warned that his conduct could result in the program expelling him.

B.  Consideration of Mitigating Information

¶ 50 Defendant also submits that the trial court did not consider mitigating evidence that was available to it when the sentencing hearing was held. Defendant did not raise this issue before the trial court, and so we shall not address it here. *See Goldman,* 923 P.2d at 375 (allegations not raised before trial court in course of postconviction proceedings are not preserved and may not be raised on appeal for the first time).

IV.   Issues Arising Out of the Postconviction Hearing

A.   Introduction

¶ 51 Defendant argues that the second judge unreasonably limited the evidence that he could submit at the postconviction hearing; and that plea counsel was ineffective in his representation of defendant during the deferred judgment revocation process.

¶ 52 Here, defendant filed four postconviction documents. The first was a motion for postconviction relief that was seventeen pages long. It contained extensive allegations of fact, and it was accompanied by nine exhibits.

¶ 53 One exhibit was plea counsel's affidavit stating, as relevant here, that (1) he advised defendant to waive a hearing on the motion to revoke the deferred judgment agreement "based on [his] mistaken, but good faith, belief that [defendant] would be accepted by [c]ommunity [c]orrections"; (2) he did not investigate whether defendant would be accepted into a community corrections facility, but "relied instead" on a statement made by defendant's probation officer that he would be accepted; and (3) he was not prepared for the sentencing hearing.

¶ 54 A second exhibit was a sworn statement from a therapist at defendant's treatment program, which stated that, had she been called at the hearing on the motion to revoke the deferred judgment agreement, she "would have testified that [defendant] should not be sentenced" to prison.

¶ 55 Other exhibits included transcripts of the hearing at which defendant waived his right to a hearing on the motion to revoke the deferred judgment and the subsequent hearing at which defendant was sentenced to prison.

¶ 56 The second document was a supplement to the postconviction motion. It was four pages long, and it contained citations of law. It was accompanied by a two-page affidavit from an attorney who is an expert in criminal defense offering the opinion, supported by analysis, that plea counsel had been ineffective and that defendant had been prejudiced by plea counsel's ineffectiveness.

¶ 57 The third document, which was three pages long, discussed a response the prosecution had filed contesting the allegations in the first postconviction motion.

¶ 58 The fourth document provided the court with additional information, including a report from the Department of Corrections about defendant's behavior, and a transcript of defendant's February 2005 guilty plea before the fifth judge.

¶ 59 Based on these documents, the second judge bifurcated defendant's postconviction hearing. The first hearing concerned defendant's allegations that plea counsel had been ineffective. It lasted for about one hour and twenty-five minutes.

¶ 60 Postconviction counsel alleged that defendant had a defense to the motion to revoke his deferred judgment based on the alleged inconsistencies and misinformation in the program's report terminating him from the treatment program. Postconviction counsel:

- quoted extensively from the report and explained the alleged defects in it with the assistance of an eight-page exhibit;

- provided testimony from defendant's probation officer, who testified that he did not tell plea counsel that defendant "would get community corrections";

- called plea counsel to the stand, who testified that, in the course of advising defendant to confess the motion to revoke the deferred judgment, (a) plea counsel did not think that he advised defendant that he would "get" community corrections; (b) he told defendant that the probation officer said that defendant "was going to community corrections"; (c) he told defendant that the prosecutor would "go along" with defendant's placement in a community corrections facility if defendant were accepted into one; but (d) a community corrections sentence "was not a promise"; and

- presented, at the second judge's request, an offer of proof that an attorney expert would testify that plea counsel's representation was ineffective because he did not conduct a sufficient investigation before defendant waived his right to a hearing on the motion to revoke the deferred judgment.

¶ 61 The court then concluded that plea counsel's conduct had not been "below the standard of care regarding minimum competency of an attorney regarding that investigation."

¶ 62 The second hearing, held on a different day, addressed defendant's request that the second judge reconsider his sentence and place him on probation. This hearing lasted about two hours. Postconviction counsel:

- presented additional testimony from the attorney expert, who discussed the statutory parameters of probation for a person in defendant's situation;

- offered more testimony from plea counsel, who stated that he did not have information about the alleged defects in the program's report at the sentencing hearing;

- called defendant's probation officer to the stand again;

- tendered an affidavit from the director of the treatment program, who stated that defendant would be eligible for reinstatement if he were sentenced to probation; and

- had defendant address the court.

¶ 63 The second judge then denied the motion to reconsider defendant's sentence. He stated that the original sentence was appropriate and the sentence "would be the same" as the original sentence if the court "viewed [it] de novo ... on everything that was presented [on that day]."

## B. Limitations on Length of Hearing

¶ 64 The trial court is obligated to administer justice, control the decorum of the courtroom, and make sure that cases are decided on appropriate grounds. *Harris v. People,* 888 P.2d 259, 270 (Colo.1995). To achieve these ends, courts have broad discretion to control the "mode and extent of the presentation of evidence." *People v. Cole,* 654 P.2d 830, 832 (Colo.1982). We review decisions exercising such control for an abuse of discretion. *Id.; see also Stevens v. People,* 796 P.2d 946, 954 n. 6 (Colo.1990)("We have consistently held that the abuse-of-discretion standard is applicable in our review of a trial

court's ruling admitting or excluding evidence.").

¶ 65 We conclude that the trial court did not abuse its discretion by limiting the time in which defendant presented evidence on his allegation either that plea counsel was ineffective or that the court erroneously denied his motion to reconsider his sentence. Although the court expressed concerns about the time each hearing was taking, our examination of the record leads us to conclude that defendant had sufficient opportunity to present evidence in support of his postconviction claims.

### C. Ineffective Assistance of Counsel

¶ 66 A defendant who claims that his or her counsel was ineffective must show that his or her attorney's representation was deficient and that the deficient representation prejudiced him or her. *Strickland v. Washington*, 466 U.S. 668, 687–96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *People v. Brown*, 250 P.3d 679, 680–81 (Colo.App.2010). A court conducting a postconviction hearing under Crim. P. 35(c) determines the weight and credibility to be given the witnesses' testimony. *Dunlap v. People*, 173 P.3d 1054, 1062 (Colo.2007). On review, we defer to the trial court's factual findings, but we review de novo the court's ultimate conclusions concerning the deficient representation and prejudice prongs of the test. *Brown*, 250 P.3d at 680–81. We will affirm a trial court's determination that the defendant was not prejudiced when the evidence only provides speculative proof of prejudice. *People v. Wiedemer*, 692 P.2d 327, 328 (Colo.App. 1984).

¶ 67 Further, although we conclude that the trial court properly denied defendant's Crim. P. 35(c) motion, we rely on different grounds. *People v. Vondra*, 240 P.3d 493, 494 (Colo.App.2010). We conclude, for the reasons listed below, that defendant was not prejudiced by plea counsel's alleged deficient performance.

¶ 68 To prove prejudice in this case, defendant was required to show, by a preponderance of the evidence, *see People v. Dunlap*, 124 P.3d 780, 795 (Colo.App.2004), that there was a reasonable probability, but for plea counsel's errors, that he would not have confessed the motion to revoke the deferred judgment agreement and would have insisted that the motion be resolved at a hearing. *See Hill v. Lockhart*, 474 U.S. 52, 58–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

¶ 69 Defendant contends that the second judge erred by not specifically addressing his postconviction allegations that plea counsel was ineffective in (1) assuring defendant that he would be sentenced to community corrections if he confessed the motion to revoke his deferred judgment; (2) not conducting a sufficient investigation to determine whether a sentence to community corrections was reasonably likely; and (3) not providing mitigating evidence at the sentencing hearing that would have justified a sentence to probation rather than to prison. However, we can determine, as a matter of law, that the record fails to support these allegations. *See People v. Duke*, 36 P.3d 149, 151 (Colo.App.2001).

¶ 70 The record does not support a conclusion that there was a reasonable probability that, but for plea counsel's alleged errors, defendant would not have confessed the motion to revoke his deferred judgment and would have insisted on having a hearing on the motion. *See Hill*, 474 U.S. at 59, 106 S.Ct. 366; *People v. Garcia*, 815 P.2d 937, 943 (Colo.1991) (applying *Hill*). In *Hill*, the Supreme Court explained the evaluation of the *Strickland* prejudice prong in the context of a guilty plea.

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommen-

dation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

*Id.* at 59, 104 S.Ct. 2052.

¶ 71 In other words, "the ultimate [question] that the court has to [answer] is whether defendant would have changed his plea." *Miller v. Champion,* 262 F.3d 1066, 1075–75 (10th Cir.2001). To answer this question in the context of this case, we must determine whether a decision to proceed to a revocation hearing "would have been rational under the circumstances." *Padilla v. Kentucky,* 559 U.S. 356, 371, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010).

¶ 72 Here, we conclude that the record establishes that it would not have been rational for defendant to "change his plea" and proceed to a hearing on the motion to revoke his deferred judgment status.

¶ 73 First, his "defense"—that there were irregularities or misstatements in the report terminating defendant from the program—was not likely to succeed at the revocation hearing. Indeed, after listening to the evidence and arguments presented at the first part of the postconviction hearing, the second judge found that the mitigating evidence concerning the alleged irregularities or misstatements in the program's report did not show that defendant's termination from the program was "wrong." This finding indicates that, even if defendant had not confessed the motion to revoke his deferred judgment and proceeded to a revocation hearing, the deferred judgment agreement would have been revoked.

¶ 74 Second, his "potentially exculpatory evidence"—the possibility that he could have been sentenced to probation rather than to prison—was also unlikely to make a difference at the sentencing hearing. After listening to the evidence and arguments presented at both parts of the postconviction hearing,

the second judge found that the prison sentence was appropriate and his sentence "would be the same" as the original sentence "view[ing it] de novo ... on everything that was presented" at the postconviction hearing.

¶ 75 Third, plea counsel had won an important concession from the prosecutor. She had agreed that she would not oppose defendant's placement in a community corrections facility if one were to accept him. The second judge agreed that he would consider the possibility of such a placement, and continued the sentencing hearing so that defendant could apply to such a facility. Although that outcome may have been unlikely, it was certainly more favorable to defendant than the prison sentence he likely faced had he proceeded to a revocation hearing. In other words, defendant was between a rock and a hard place, and confessing the motion to revoke the deferred judgment in exchange for a chance, although remote, at a community corrections placement was the best outcome he could rationally expect.

## V. Correction of the Mittimus

¶ 76 Defendant asserts, and the prosecution concedes, that the mittimus incorrectly states that his sentence includes a mandatory three-year term of parole. Under section 18–1.3–1006(1)(b), C.R.S.2011, defendant's conviction requires a ten-year-to-life parole term. Thus, we remand to the trial court to correct the mittimus to reflect the proper parole term.

¶ 77 The order is affirmed. The case is remanded to the trial court for the sole purpose of correcting the mittimus.

Judge RUSSEL concurs.

Judge HAWTHORNE dissents.

Judge HAWTHORNE dissenting.

¶ 78 I respectfully dissent because I read the plain language of section 16–11–206(2), C.R.S.2011—which governs revocation proceedings—to require that defendants "plead guilty or not guilty" to charges of violating probation or a deferred judgment. I further conclude that Crim. P. 11(b), which applies to

"Pleas of Guilty," applies in revocation proceedings.

### I.

¶ 79 I view defendant's due process claim more broadly than does the majority, which asserts that the issue raised by defendant is whether the "Due Process Clause required the second judge [to] advise him of the penalties he faced if the deferred judgment agreement were to be revoked." I interpret defendant's claim to include the question of whether the revocation court (the "fourth judge") violated his due process right to enter a knowing, voluntary, and intelligent guilty plea by failing to determine, as required by Crim. P. 11(b)(4), whether he understood that, by pleading guilty to violating the terms of his deferred judgment and sentence, he could receive an indeterminate sentence of two years to life.

### II.

¶ 80 When construing a statute, our task is to ascertain and give effect to the legislature's intent. *Ceja v. Lemire*, 154 P.3d 1064, 1066 (Colo.2007). "If courts can give effect to the ordinary meaning of words used by the legislature, the statute should be construed as written, giving full effect to the words chosen, as it is presumed that the General Assembly meant what it clearly said." *Id.* (quoting *State v. Nieto*, 993 P.2d 493, 500 (Colo.2000)). Additionally, where the General Assembly uses the word "shall" in a statute, we presume it is mandatory. *E. Lakewood Sanitation Dist. v. Dist. Court*, 842 P.2d 233, 235 (Colo.1992).

### III.

¶ 81 Section 16–11–206(2) is entitled "Revocation Hearing," and provides in relevant part:

> At or prior to the commencement of the hearing, the court shall advise the probationer of the charges against him and the possible penalties therefor and shall require the probationer to *plead guilty or not guilty*.

(Emphasis added.)

¶ 82 Crim. P. 11 provides in relevant part:

> (b) Pleas of Guilty and Nolo Contendere. The court shall not accept a *plea of guilty* or a plea of nolo contendere without first determining . . .
>
> (1) That the defendant understands the nature of the charge and the elements of the offense to which he is pleading and the effect of his plea . . . [and]
>
> (4) That he understands the possible penalty or penalties . . . .

Crim. P. 11(b)(1), (4) (emphasis added).

¶ 83 If the General Assembly did not intend that revocation proceedings fall within Crim. P. 11(b), which governs pleas of guilty, it would have used words such as "admit or deny." *See Dillard v. Indus. Claim Appeals Office*, 134 P.3d 407, 409 (Colo.2006) ("When we construe a statute, we do not adopt a construction that renders words superfluous[ ] or injects additional terms. . . ."); *E–470 Pub. Highway Auth. v. Kortum Inv. Co.*, 121 P.3d 331, 333 (Colo.App.2005) ("Had the General Assembly intended otherwise, it could have used language to that effect.").

¶ 84 It is also significant that section 16–11–206 was enacted *after* Crim. P. 11. Thus, we presume the General Assembly was aware of Crim. P. 11(b)'s requirements and protections. *Fang v. Showa Entetsu Co.*, 91 P.3d 419, 422 (Colo.App.2003) ("[T]he General Assembly . . . is presumed to be aware of existing law. . . ."); *Dayhoff v. State*, 42 Colo. App. 91, 95, 595 P.2d 1051, 1054–55 (1979) (Berman, J., dissenting) ("It is presumed that the General Assembly, in enacting a statute, acts 'with full knowledge of all existing law dealing with the same subject.'" (quoting *In re U.S. Dist. Court*, 179 Colo. 270, 275, 499 P.2d 1169, 1171 (1972))), *aff'd*, 199 Colo. 363, 609 P.2d 119 (1980); *see* Ch. 44, sec. 9, 1972 Colo. Sess. Laws 268 (predecessor to § 16–11–206 enacted effective July 1, 1972); Crim. P. 11, 1963 Colo. Sess. Laws 1145.

¶ 85 The majority concludes that revocation proceedings do not fall within Crim. P. 11(b). However, that decision is difficult to reach without reading in words to the rule as follows: "The court shall not accept a plea of guilty *(except a plea of guilty entered pursu-*

*ant to section 16–11–206(2))* or a plea of nolo contendere without first determining...." This, a court may not do. *Nat'l Farmers Union Prop. & Cas. Co. v. Estate of Mosher,* 22 P.3d 531, 534 (Colo.App.2000) ("We are not at liberty to read additional terms into, or to modify, the plain language of a statute ...."); *see People in Interest of R.D.,* 259 P.3d 562, 565 (Colo.App.2011) (same rules of statutory interpretation apply when interpreting procedural rules).

¶ 86 Nor am I persuaded otherwise by the cases from other jurisdictions cited by the majority, because none of those jurisdictions addressed a statute like section 16–11–206(2), which brings their jurisdiction's revocation proceedings within the ambit of their Crim. P. 11 counterpart rules.

¶ 87 I also disagree with the majority's conclusion that Crim. P. 11(b) does not apply because a charge of violating probation or a deferred judgment does not constitute a "new substantive charge." Such charges are distinct from the initial charges lodged against the defendant and must be separately proven by the prosecution. Indeed, by pleading guilty to such charges, the defendant waives the right to present evidence refuting the claim that he or she violated probation or the conditions of his or her deferred judgment. The consequence of pleading guilty to such charges may include the loss of liberty or, as here, lifetime imprisonment. Thus, although charges that a defendant violated conditions of probation or a deferred judgment do not represent a wholly new criminal proceeding against the defendant, I conclude they are nevertheless new charges that trigger the requirements and protections of Crim. P. 11(b).

## IV.

¶ 88 I also conclude that the district court (the "fourth judge") did not comply with Crim. P. 11(b).

¶ 89 Because defendant waived formal advisement in 2008 before the deferred judgment revocation hearing, the court had no obligation to advise defendant "of the charges against him and the possible penalties therefor." However, this did not relieve the court of its independent obligation under Crim. P. 11(b)(1) and (4) to "determin[e] [t]hat the defendant [understood] the nature of the charge and the elements of the offense to which he [was] pleading and the effect of his plea [and][t]hat he [understood] the possible penalty or.penalties." *Cf. People v. Muniz,* 667 P.2d 1377, 1383 (Colo.1983) (waiving reading of the information does not dispense with Crim. P. 11's express mandate that court not accept guilty plea without first determining that defendant understands nature of charge).

¶ 90 Indeed, when defendant pled guilty to the underlying criminal charges in February 2005, the district court (the "third judge") complied with Crim. P. 11(b)'s requirements by determining that defendant understood the nature of the charge and the possible penalties.

¶ 91 However, in September 2008—over three years later—when defendant pled guilty to the charges of violating his deferred judgment conditions, the district court (the "fourth judge") did not determine whether defendant understood the nature of the current charges against him and whether he understood the possible penalties he could receive, including imposition of the original life imprisonment sentence. On the contrary, the transcript of the plea hearing does not indicate that the prosecutor or defendant's counsel informed defendant that he could be imprisoned for life if he pled guilty to violating the conditions of his deferred judgment. *Cf. People v. Gresl,* 89 P.3d 499, 502 (Colo.App.2003) (plea was valid where prosecutor mentioned possible penalty at the beginning of providency hearing). And defendant's counsel later admitted he "did not advise [defendant] on September 8, 2008 prior to his admission of the complaint to revoke his deferred judgment that [defendant] could be sentenced to life in prison if he were not accepted in Community Corrections." Nor did defendant sign any written plea agreement detailing the possible penalties. *But see People v. Van Hook,* 36 Colo.App. 226, 228, 539 P.2d 507, 508 (1975) ("A printed form signed by a defendant is no substitute for the trial court's determination that the

requirements of the rule [Crim. P. 11(b)] have been met.").

¶ 92 Moreover, at the December 2008 sentencing hearing, defendant was confused and said he had "no idea what's going on." Defendant had pled guilty to the underlying offenses over three years earlier, and his plea involved different charges.

¶ 93 The majority relies on defendant's statement at the December 2008 sentencing hearing that he was "going to go to prison for the rest of [his] life." But that statement was part of this broader exchange:

> Defense counsel: This is a sentence basically sentencing this man to life in prison. . . .
>
> Defendant: . . . *I have been confused.* I have no idea what's going on. I go down to Colorado Springs hoping that I can get into a treatment program. Come to find out that two days before Thanksgiving they denied me, and now I'm going to go to prison for the rest of my life. *I just don't know what's going on, Your Honor.*

(Emphasis added.)

¶ 94 When defendant's statement is read in context, it reflects his confusion as to why he was going to prison for the rest of his life.

## V.

¶ 95 Applying Crim. P. 11(b) to guilty pleas entered in revocation proceedings would not unduly burden district courts because the court would engage in the same Crim. P. 11 colloquy that it conducts with respect to all other guilty pleas. That colloquy is justified, considering that a defendant may be imprisoned for life by pleading guilty to revocation charges.

¶ 96 Accordingly, I would reverse the postconviction court's denial of defendant's Crim. P. 35(c) postconviction motion and remand the case to the district court with instructions to vacate defendant's guilty plea to the revocation charges. Because that ruling would be dispositive, I need not address defendant's remaining contentions.