23CA0392 Peo v Williams 12-11-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0392
City and County of Denver District Court No. 15CR5126
Honorable Kandace C. Gerdes, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Wenston Williams,

Defendant-Appellant.

---

ORDER AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE WELLING
Gomez and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 11, 2025

---

Philip J. Weiser, Attorney General, Brenna A. Brackett, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Victor T. Owens, Alternate Defense Counsel, Parker, Colorado, for Defendant-Appellant

¶ 1    Defendant, Wenston Williams, appeals the district court's order denying his Crim. P. 35(c) petition for postconviction relief without an evidentiary hearing. We affirm the court's order in part, reverse it in part, and remand the case with directions.

## I.    Background

¶ 2    A jury convicted Williams of aggravated robbery and second degree assault. The trial court adjudicated him a habitual criminal and sentenced him to sixty-four years in the custody of the Department of Corrections (DOC), concurrently on each count, followed by five years of mandatory parole.

¶ 3    Williams directly appealed his conviction and sentence, and a division of this court affirmed the judgment of conviction, reversed the sentence, and remanded with directions to the district court to impose a new sentence and to correct the mittimus. *People v. Williams*, 2019 COA 32, ¶ 3. Specifically, the division reversed the district court's adjudication of Williams as a habitual criminal. *Id.* at ¶ 48. On remand, the district court resentenced Williams to twenty-four years in the custody of the DOC, concurrently on each count, followed by three years of mandatory parole.

¶ 4    Thereafter, Williams timely filed a pro se petition for postconviction relief under Crim. P. 35(c) asserting twelve claims. The postconviction court appointed counsel, who filed a supplement to Williams's pro se petition. In the supplemental petition, Williams asserted seven ineffective assistance of counsel claims. He also included a report from a fingerprint comparison expert. The People responded, and Williams replied. In his reply, Williams included a report from an eyewitness identification expert.

¶ 5    In a detailed written order, the postconviction court denied Williams's Crim. P. 35(c) petition without a hearing, concluding that his arguments lacked merit.

## II.    Analysis

¶ 6    On appeal, Williams contends that the postconviction court erred in denying five of his ineffective assistance of trial counsel claims without a hearing. Specifically, he contends that he's entitled to a hearing on his claims that trial counsel (1) failed to conduct an adequate pretrial investigation; (2) failed to consult with and call at trial a fingerprint analysis expert; (3) failed to adequately challenge the photo lineup, including by failing to consult with and call at trial an identification expert; (4) failed to withdraw as

Williams's counsel and to fully inform the trial court about the breakdown in communication between him and Williams; and (5) gave improper advice to Williams regarding waiving his speedy trial right and took actions inconsistent with protecting that right.

¶ 7 We conclude that only Williams's first claim warrants an evidentiary hearing, so we reverse in part.

### A. Applicable Law and Standard of Review

¶ 8 "A criminal defendant is constitutionally entitled to effective assistance from his counsel." *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003). To succeed on an ineffective assistance of counsel claim, a defendant must establish that (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defendant, meaning that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Dunlap v. People*, 173 P.3d 1054, 1062-63 (Colo. 2007).

¶ 9 Furthermore, "[c]ounsel has a duty to make reasonable investigations." *People v. Newmiller*, 2014 COA 84, ¶ 45 (citing

*Strickland*, 466 U.S. at 691). "A reasonable investigation means one that is 'sufficient to reveal potential defenses and the facts relevant to guilt.'" *Id.* (quoting *Davis v. People*, 871 P.2d 769, 773 (Colo. 1994)).

¶ 10      If a defendant alleges facts in his Crim. P. 35(c) petition that, if true, entitle him to postconviction relief, the claims sufficiently pleaded must proceed to an evidentiary hearing. *People v. Joslin*, 2018 COA 24, ¶ 4 (citing Crim. P. 35(c)(3)(IV)). On the other hand, "if the motion, the files, and the record clearly establish that the defendant is not entitled to relief," a Crim. P. 35(c) petition may be denied without a hearing. *People v. DiGuglielmo*, 33 P.3d 1248, 1251 (Colo. App. 2001).

¶ 11      An inquiry into either *Strickland* prong presents a mixed question of law and fact. *People v. Sifuentes*, 2017 COA 48M, ¶ 16. But whether a Crim. P. 35(c) petition sufficiently states a claim for relief and must proceed to an evidentiary hearing is a legal determination. *People v. Long*, 126 P.3d 284, 286 (Colo. App. 2005). Accordingly, we review a postconviction court's denial of a Crim. P. 35(c) petition without a hearing de novo. *People v. Wilson*, 397 P.3d

4

1090, 1094 (Colo. App. 2011) (citing *Long*, 126 P.3d at 286), *aff'd*, 2015 CO 37.

### B. Failure to Conduct an Effective Pretrial Investigation

¶ 12    First, Williams argues that the postconviction court erred when it denied his claim that his trial counsel was ineffective by failing to conduct an adequate pretrial investigation. We agree that this claim should have proceeded to an evidentiary hearing.

### 1. Additional Facts

¶ 13    In Williams's first ineffective assistance of counsel claim, he asserts that trial counsel generally failed to conduct an adequate pretrial investigation. Williams includes in this claim that his trial counsel failed to investigate Williams's alibi defense.

¶ 14    In both his briefing to the postconviction court and on appeal, Williams argues that his contentious relationship with his trial counsel led to a deficient pretrial investigation. Specifically, in his supplemental petition, Williams argues that his trial counsel didn't have a "cohesive defense strategy at trial" because counsel didn't meet with Williams enough before trial.

¶ 15    The primary disputed issue at trial was identity. The prosecution's theory focused on the victim's and co-defendant's

identification of Williams as the assailant. In turn, Williams's counsel attacked the victim's and co-defendant's credibility and the reliability of their identifications of Williams, arguing that it wasn't Williams who robbed and assaulted the victim.

¶ 16 The charged offense occurred late at night on December 31, 2014. According to emails between Williams and his trial counsel sent in March 2016, Williams and his counsel discussed his potential alibi defense. Around that time, Williams emailed his counsel, "Hey Jason I got it mixed up[.] I did not go to my ex-wife's house then[;] I went this past New Year's." Counsel responded, "I'm hoping you can remember where you were or what you were doing New Years 2014. Let me know as soon as you can."

¶ 17 Williams and the prosecution disagree about when Williams and his trial counsel next spoke about his alibi. In his supplemental petition, Williams averred that he told his trial counsel that he was at Glenn Goodson's boxing gym on December 31, 2014, the night in question. He explained that Goodson hosts a New Year's Eve party every year and that he was present at the party in 2014 because he worked at the gym. And in his supplemental petition, Williams asserted that counsel didn't

interview or subpoena Goodson (thus implying that he had relayed the information about Goodson to trial counsel sometime before the morning of trial) and that he suffered prejudice at trial due to counsel's failure to investigate Goodson as an alibi witness who could testify regarding Williams's whereabouts on New Year's Eve 2014. Specifically, Williams averred that "Goodson would say that . . . Williams was part of the gym's staff and was at the New Year's Eve party on December 31, 2014."

¶ 18　But trial counsel told a different story to the trial court in September 2016 on the morning of the first day of trial. That morning, counsel requested a hearing under *People v. Bergerud*, 223 P.3d 686 (Colo. 2010), to explain to the trial court the conflict between himself and Williams. During that hearing, counsel requested to withdraw as Williams's counsel due to a breakdown in communication between them.

¶ 19　At the *Bergerud* hearing, trial counsel told the trial court that he was concerned about his ability to effectively represent Williams at trial because Williams had just raised an alibi defense with him that counsel hadn't yet investigated. Counsel explained,

> I think Mr. Williams is representing a defense of alibi, which was not — we didn't communicate, and therefore those issues weren't addressed, and that's my — that's a big concern of mine, because that is — goes beyond just trial strategy, and goes into the ability to provide an adequate defense for Mr. Williams.

¶ 20 Trial counsel noted that the delay in getting this information from Williams was the "direct result of the fact that we . . . do not communicate." The trial court then asked trial counsel when Williams had first raised the alibi defense issue with him. Counsel responded, "[W]e talked about it today."

¶ 21 On appeal, the People contend that the record establishes that trial counsel asked Williams about his alibi defense in March of 2016 via email and that it was Williams's fault that he didn't provide this information to counsel until the morning of the first day of trial in September of 2016, so any delay by his counsel in investigating his alibi was Williams's own fault, not counsel's. The People argue that this conclusively demonstrates that counsel's performance wasn't deficient, and, therefore, this claim was properly denied without a hearing.

¶ 22 In its order, the postconviction court concluded that Williams failed to establish either deficient performance or prejudice as to trial counsel's pretrial investigation. Specifically, the postconviction court explained that the record established that counsel had emailed Williams on multiple occasions, had two office meetings with Williams, and had met with Williams at court to discuss the case. The postconviction court also noted that the record established that it was Williams who chose to forgo meeting with counsel on other occasions. The court also explained that the record established that, as part of his investigation, trial counsel retained an investigator to interview the victim, obtain surveillance camera footage, and subpoena witnesses.

¶ 23 As for Williams's argument that trial counsel failed to investigate his alibi defense, the postconviction court noted that there was no evidence in the record to support the alleged alibi and that, at trial, this information would have been "impeaching at best" and wasn't "material evidence." The court also said that, "[a]t no point," did Williams tell his trial counsel about an alibi witness.

9

## 2.  Analysis

¶ 24    At this stage, we must accept Williams's well-pleaded allegations that trial counsel failed to conduct an effective pretrial investigation, including that counsel failed to fully develop an alibi defense, as true, *see Joslin*, ¶ 4, and denial without a hearing is appropriate only "if the motion, the files, and the record clearly establish that the defendant is not entitled to relief," *DiGuglielmo*, 33 P.3d at 1251.

¶ 25    In their briefing to the postconviction court and on appeal, the People focus on the fact that trial counsel told the trial court on the morning of the first day of trial that Williams had only told counsel about his alibi that morning.  But reaching this conclusion requires crediting counsel's statement in September 2016 over Williams's contrary allegation in his supplemental petition that he had disclosed his alibi to his counsel sometime before the first morning of trial.

¶ 26    Thus, although the record contains some evidence — perhaps even persuasive evidence — that Williams didn't disclose his alibi to trial counsel until the morning of trial, it doesn't definitively resolve that issue, as the court hasn't had the opportunity to assess

witness credibility. Perhaps more importantly, even assuming the disclosure wasn't made until the morning of trial, the record doesn't definitively resolve whether the fault for that late disclosure lies at the feet of Williams or his counsel. We therefore can't conclude that the record definitively establishes counsel's performance wasn't deficient for failing to investigate Williams's alibi.

¶ 27  Furthermore, given the prosecution's focus at trial on the victim's and co-defendant's identification of Williams as the assailant, an alibi defense, if developed through an adequate investigation, could have contradicted these identifications, casting reasonable doubt on the contested issue of identification. Thus, taking Williams's alibi-related allegations as true, additional investigation may have revealed substantial evidence — potentially, an alibi defense — which, if pursued at trial, might have reasonably led to a different result. *See People v. Chambers*, 900 P.2d 1249, 1252 (Colo. App. 1994). We therefore can't conclude that Williams failed to adequately allege prejudice from trial counsel's purported failure to effectively conduct a pretrial investigation.

¶ 28  Accordingly, we remand Williams's ineffective assistance of counsel claim that trial counsel failed to conduct an effective

pretrial investigation into a potential alibi so that it may proceed to an evidentiary hearing.  In doing so, we offer no opinion on whether, after a hearing, this claim will warrant relief.

### C.     Failure to Call Fingerprint Expert

¶ 29     Second, Williams argues that the postconviction court erred when it denied his claim that his trial counsel was ineffective for failing to consult with and call a fingerprint expert.  We discern no error because Williams failed to adequately allege that he was prejudiced by trial counsel's purported failures.

### 1.     Additional Facts

¶ 30     According to the evidence presented at trial, Williams and a co-defendant robbed and assaulted an Uber driver.  Afterwards, a crime scene investigator pulled a few fingerprints off the victim's car for analysis.

¶ 31     At trial, the prosecutor relied on testimony from the victim and the co-defendant to identify Williams as the perpetrator, not on fingerprint evidence.  Indeed, during opening statement, the prosecutor explained, "[O]nly one of the four fingerprints that were pulled off of the door frame is useable.  At the same time, we're

talking about an Uber. People are in and out of there all the time. The evidentiary value of that piece of evidence is questionable too."

¶ 32 The People's fingerprint expert testified that only one fingerprint found at the scene was of any potential evidentiary value. She testified that she compared that fingerprint to Williams's known prints, but her conclusion as to who left the fingerprint was inconclusive. She also clarified that she couldn't tell whether the person who left the fingerprint was responsible for the crime, only that whoever left the print was at the scene at some point.

¶ 33 And in closing argument, the prosecutor again explained that "if the fingerprint d[id]n't belong to the defendant, that d[id]n't harm the case" and emphasized that 100 to 150 Uber passengers came in and out of the victim's car each week.

## 2. Analysis

¶ 34 Williams hasn't sufficiently alleged that he was prejudiced by his trial counsel's failure to call a fingerprint expert at trial. Even assuming that trial counsel's failure to consult with a fingerprint expert constituted deficient performance, there isn't a reasonable probability that the result at trial would have been different had a fingerprint expert been consulted and testified for the defense, as

13

fingerprint evidence didn't play a meaningful role in establishing identity. *See Strickland*, 466 U.S. at 695.

¶ 35    In his supplemental petition to the postconviction court, Williams attached a report from a fingerprint analysis expert stating that the expert reviewed the one usable fingerprint from the scene and concluded that it wasn't made by Williams. But even if such an expert testified to this at trial, this evidence wouldn't have been exculpatory because, as the prosecutor recognized, the victim drove for Uber and could have had over 100 passengers in his car during the week of the assault. Further, there was no evidence linking the one usable fingerprint introduced at trial to the assailant. Therefore, even if Williams' counsel presented evidence at trial that definitively excluded Williams as the source of the fingerprint, such evidence wouldn't have been exculpatory or otherwise support that someone other than Williams was the assailant.

¶ 36    On appeal, Williams overstates the importance of the fingerprint evidence at trial in arguing prejudice. He contends that the fingerprint evidence was the "most critical piece" of evidence against him and was relied upon by the prosecution in securing a conviction. But our review of the record belies this contention.

14

Indeed, as evinced by the prosecutor's opening and closing statements, the prosecution's theory at trial focused on the victim's and co-defendant's identification of Williams, not any fingerprint evidence.

¶ 37     Given the prosecutor's lack of reliance on the fingerprint evidence at trial, the fact that both the victim and co-defendant identified Williams as the assailant, and that over 100 people came in and out of the victim's car each week, we reject Williams's articulation of prejudice. Accordingly, the postconviction court properly denied this claim without an evidentiary hearing.[1]

---

[1] Williams also contends on appeal that the prosecutor argued at trial that Williams didn't cooperate in providing valid comparison exemplars, and, due to this lack of cooperation, the prosecution's expert couldn't determine who had left the fingerprint. Williams argues that because trial counsel failed to consult with a fingerprint expert, he couldn't contest this assertion at trial, and this too harmed his case. The People respond that because Williams didn't raise this argument to the postconviction court, he didn't preserve it for appeal. We agree it wasn't preserved. *See People v. Finney*, 2012 COA 38, ¶ 15 (declining to consider a contention in a Crim. P. 35(c) petition that the defendant didn't raise below), *aff'd*, 2014 CO 38. Moreover, even assuming Williams adequately preserved this argument, Williams has failed to show prejudice as to this contention for the same reasons discussed above.

15

### D.    Failure to Adequately Challenge the Photo Lineup

¶ 38    Third, Williams argues that the postconviction court erred when it denied his claim that his trial counsel provided ineffective assistance by failing to adequately challenge the photo lineup. Again, we reject this contention because Williams failed to adequately allege that he was prejudiced by trial counsel's purported failures.

### 1.    Additional Facts

¶ 39    The victim identified Williams as his assailant in a pretrial photo lineup. But the victim was only seventy percent sure that the man in the photograph, Williams, was his assailant.

¶ 40    In Williams's supplemental petition, he argued that empirical studies show the negative impact of stress on eyewitness identifications, as well as the general unreliability of eyewitness identifications. He also attached to his reply a report from an expert who opined on the victim's unreliability in identifying Williams. Based on this, Williams asserted that trial counsel was ineffective for failing to consult with and call at trial an eyewitness identification expert.

¶ 41 The People respond that trial counsel's performance wasn't deficient because counsel vigorously cross-examined the victim at trial about his identification of Williams, eliciting testimony that it was dark at the time of the incident, the assailant was sitting in the backseat and the victim was in the front, the assailant was wearing a hoodie, and the victim was only seventy percent confident in identifying Williams as his assailant. Therefore, the People assert, Williams failed to establish either deficient performance or prejudice.

¶ 42 In his reply brief to the postconviction court, Williams contended that cross-examination wasn't a substitute for scientific expert testimony. He asserted that trial counsel's failure to call an identification expert prejudiced him because an expert would have put reasonable doubt in the jurors' minds by explaining how the victim misidentified Williams.

¶ 43 In its order denying this claim without a hearing, the postconviction court determined that Williams hadn't adequately alleged deficient performance because the record established that trial counsel challenged the photo lineup with extensive pretrial litigation and effectively cross-examined the victim at trial on the

17

issue. It also observed that Williams didn't articulate any actual prejudice that he suffered due to the alleged deficient performance.

## 2. Analysis

¶ 44 We agree with the postconviction court's determination regarding prejudice. Taking Williams's allegations as true and assuming trial counsel's performance was deficient for failing to consult with and call at trial an eyewitness identification expert, Williams hasn't alleged sufficient prejudice. Williams argues that the evidence against him wasn't "overwhelming" because his co-defendant had major credibility issues, the victim was only seventy percent sure of his identification, there was no video or audio recording of the incident, and there was no reliable DNA evidence. But Williams is understating the impact of his co-defendant's identification of him and her testimony at trial.

¶ 45 Even assuming that an eyewitness identification expert had testified that the victim's identification of Williams was unreliable, and assuming that the jury chose to believe that testimony, Williams's co-defendant still identified him as the assailant. An eyewitness misidentification expert's testimony would attack only

the victim's identification of Williams and wouldn't affect his co-defendant's identification of him.

¶ 46 Thus, given the importance at trial of the co-defendant's identification of Williams, there isn't a reasonable probability that, but for trial counsel's failure to call an identification expert, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. Accordingly, the postconviction court properly denied this claim without an evidentiary hearing.

### E. Failure to Withdraw and Failure to Fully Inform the Court During the *Bergerud* Hearing

¶ 47 Fourth, Williams argues that the postconviction court erred when it denied his claim that his trial counsel was ineffective for failing to withdraw as Williams's counsel and for failing to fully inform the trial court about the breakdown in communication between Williams and trial counsel during the *Bergerud* hearing. We disagree.

### 1. Additional Facts

¶ 48 Trial counsel had surgery in April of 2016 and requested to continue Williams's trial, which, at that time, was set for May 9, 2016. Counsel explained to the trial court that his surgery recovery

timeline would make a May trial difficult, and the trial court granted his request to continue the trial. The court reset the trial for July 2016. Trial was then continued once more to September 2016.

¶ 49     As discussed before, at the *Bergerud* hearing on the morning of the first day of trial in September 2016, trial counsel requested to withdraw as Williams's counsel due to a breakdown in communication between them. He told the trial court that Williams had "trust issues" with him and that they "only met a couple of times." In conclusion, counsel stated, "Williams and I are not communicating." The trial court denied counsel's motion to withdraw.

¶ 50     Williams argues that trial counsel was ineffective at the *Bergerud* hearing for failing to provide a more complete narrative regarding their fractured relationship to the trial court. Specifically, Williams contends that counsel didn't mention counsel's medical situation from earlier in the year and didn't state how many times he had met with Williams before trial. Williams contends that trial counsel should have provided more details to the trial court about counsel's lack of preparation to support his motion to withdraw.

## 2. Analysis

¶ 51    Williams's fourth ineffective assistance of counsel claim, as he argues it on appeal, contains two distinct contentions: (1) that trial counsel was ineffective for failing to withdraw as Williams's counsel and (2) that counsel was ineffective for failing to fully inform the trial court about the breakdown in communication between him and Williams.

¶ 52    As an initial matter, it's unclear if trial counsel even represented Williams during the *Bergerud* hearing and thus owed him a duty of effective assistance of counsel during that hearing. *See Bergerud*, 223 P.3d at 696 ("Though represented by counsel at the time, Bergerud, like most defendants in his position, was effectively proceeding pro se during his request for new counsel."); *cf. People v. Kelling*, 151 P.3d 650, 657 (Colo. App. 2006) ("[C]ounsel could not be expected to litigate his own ineffectiveness."). But even assuming an ineffective assistance of counsel claim is cognizable under this circumstance, we are convinced the postconviction court properly denied it without a hearing.

¶ 53    With respect to his first contention, Williams doesn't explain how trial counsel was ineffective for failing to withdraw, and his

allegation of prejudice is conclusory. Indeed, the record clearly establishes that trial counsel did in fact move to withdraw from the case on the morning of the first day of trial. The postconviction court therefore correctly denied this claim without a hearing.

¶ 54 With respect to his second contention, Williams hasn't sufficiently alleged that trial counsel's performance was deficient for failing to fully inform the trial court about the breakdown in communication between himself and Williams. The record demonstrates that counsel fully and candidly told the trial court during the *Bergerud* hearing about their communication breakdown. Moreover, there is no basis to believe that the trial court was unaware of trial counsel's medical situation given that five months earlier, the same trial court had granted trial counsel's request for a continuance due to counsel's recent surgery. Accordingly, Williams hasn't sufficiently alleged deficiency under *Strickland* for this claim.

¶ 55 Williams also hasn't shown that he was prejudiced by trial counsel's alleged failure to fully inform the court about the breakdown in communication between him and Williams. He concludes that, but for this alleged deficient performance, there is a

reasonable probability that the trial court would have found a conflict during the *Bergerud* hearing and appointed new counsel, and he conclusively surmises that the result of the proceedings would have been different. This statement, without more, is a "conclusory allegation" that is "insufficient to demonstrate that he may be entitled to postconviction relief." *People v. Osorio*, 170 P.3d 796, 801 (Colo. App. 2007).

¶ 56 Accordingly, we agree with the postconviction court that Williams hasn't sufficiently alleged deficiency and prejudice on this claim to warrant an evidentiary hearing.

F. Failure to Ensure Valid Speedy Trial Waiver

¶ 57 Finally, Williams argues that the postconviction court erred when it denied his claim that his trial counsel was ineffective for giving him improper advice regarding waiving his speedy trial right and taking actions inconsistent with protecting that right. Again, we disagree.

1. Additional Facts

¶ 58 As noted previously, in March 2016, trial counsel filed a motion to continue the then-scheduled May trial because counsel had to undergo surgery in April. At a hearing on April 29, 2016, the

23

prosecutor didn't object to the requested continuance, Williams signed a waiver of his right to a speedy trial, and the trial court granted the requested continuance. This is the only speedy trial waiver in the record.

¶ 59    On July 1, 2016, the prosecutor requested to continue the then-scheduled July 5 trial because the prosecution hadn't had contact with Williams's co-defendant, a key witness against Williams. Trial counsel didn't object to the continuance, and the trial court granted the request. The court did so without requiring Williams to waive his right to a speedy trial because it reset trial within the then-existing speedy trial deadline.

¶ 60    In his pro se Crim. P. 35(c) petition, Williams argued that trial counsel was ineffective by advising Williams to waive his right to a speedy trial. Williams didn't explain when this waiver occurred. On appeal, Williams reasserts this claim, focusing on two specific contentions: (1) that counsel was ineffective for advising him that if he waived his right to a speedy trial, he would receive a more favorable plea offer from the prosecution; and (2) that counsel was ineffective for agreeing to the prosecution's request to continue trial because, by doing so, counsel was only helping the prosecution by

giving them more time to locate his co-defendant to testify against him. Williams contends on appeal that this waiver occurred on July 29, 2016.

¶ 61 The postconviction court concluded that Williams hadn't provided enough evidence to establish deficient performance or prejudice under *Strickland.*

### 2. Analysis

¶ 62 We agree with the postconviction court that Williams didn't sufficiently allege either deficient performance or prejudice under *Strickland* to warrant an evidentiary hearing for this claim.[2] From the record, it's clear that Williams didn't waive his speedy trial right on July 29, 2016, as he argues on appeal. Instead, on July 1, 2016, the prosecutor requested a continuance of the July 5 trial

---

[2] Williams first advanced this claim in his pro se petition and didn't reassert it in his supplemental petition. Although the record doesn't definitively establish whether Williams intended to abandon this claim by not including it in his supplemental petition, Williams did begin his supplemental petition by stating that "Williams incorporates by reference his pro se" petition. Based on this and because the prosecution doesn't argue that Williams abandoned this claim, we address the merits. *Cf. People v. Smith*, 2024 CO 3, ¶¶ 19-20 (concluding that the defendant "made a conscious decision not to pursue" omitted pro se claims when neither counsel's motion nor reply "indicated an intention to continue to pursue the omitted pro se claims").

date because the prosecution couldn't locate Williams's co-defendant, and the trial court granted the request without securing a speedy trial waiver from Williams.

¶ 63 Even assuming Williams is referring to the time when he did waive his right to a speedy trial on April 29, 2016, the record shows that that continuance was at the request of the defense due to trial counsel's recent surgery, not at the prosecutor's request.

¶ 64 Finally, taking Williams's contention as true that trial counsel advised him to waive his right to a speedy trial because he would receive a more favorable plea offer from the prosecution, Williams hasn't explained how he was prejudiced by this advice. Furthermore, the continuance for which a speedy waiver was required and executed was at the request of trial counsel to allow time for counsel to recover from surgery, not to give the prosecution more time to locate a key witness against Williams. Simply put, the record refutes his contention that any speedy trial waiver was invalid or imprudently agreed to.

¶ 65 Accordingly, the postconviction court properly denied this claim without an evidentiary hearing.

## III. Disposition

¶ 66    The postconviction court's order denying Williams's Crim. P. 35(c) petition is affirmed in part and reversed in part, and the case is remanded for the trial court to hold an evidentiary hearing on Williams's ineffective assistance of counsel claim that trial counsel failed to conduct an effective pretrial investigation into a potential alibi witness.

JUDGE GOMEZ and JUDGE SULLIVAN concur.